Nathaniel DUDLEY, individually, and on behalf of all others similarly situated, Plaintiff-Appellant,

v.

D. Lamar STEWART, et al., Defendants-Appellees.

No. 82–8428.

United States Court of Appeals, Eleventh Circuit.

Feb. 13, 1984.

James Finkelstein, Albany, Ga., for plaintiff-appellant.

C. Nathan Davis, Spencer Lee, Albany, Ga., for defendants-appellees.

Before HILL and KRAVITCH, Circuit Judges, and MORGAN, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Plaintiff-appellant Nathaniel Dudley, while incarcerated in the Daugherty County Jail as a convicted felon awaiting transfer

to a state penitentiary, instituted this class action under 42 U.S.C. § 1983 seeking damages, injunctive and declaratory relief against county jail officials for placing him in solitary confinement without due process. Dudley alleged that he was placed in an individual cell for over one hundred days for disciplinary reasons, but that he was neither afforded a hearing nor notified of any charges against him either before or during his incarceration. He also alleged that because the general practice of jailers in Daugherty County is to subject inmates to disciplinary confinement without notice or hearing, the case is appropriate for class action on behalf of all current and future inmates. Dudley contends that the disciplinary measures of the Daugherty County jailers violate prisoners' rights to due process as defined in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

The district court dismissed Dudley's complaint on summary judgment on two alternative grounds. The court viewed the controversy as moot because Dudley had since been released from solitary confinement and transferred to a state penitentiary. Alternatively, even if the case were not moot, the court held that Dudley's due process rights were not violated because the principles enunciated in *Wolff* do not apply to county jails. In addition, the district court summarily ruled that the action was not appropriate for class certification.

## I. *Case or Controversy*

■ The district court erred in viewing the controversy as moot, at least as to Dudley's claim for money damages. The Supreme Court has held that a damages claim by a prisoner whose due process rights have been violated is cognizable under section 1983. *Wolff,* 94 S.Ct. at 2974; *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The claim remains valid and a remedy is available whether or not the inmate is still incarcerated.

Dudley's request for injunctive and declaratory relief, however, presents a more difficult question. Without class certification, Dudley's claim for equitable relief fails to present a case or controversy. Past ex-posure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury. *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 675–76, 38 L.Ed.2d 674 (1974). Since Dudley is no longer in the custody of county jail officials, the most that can be said for his standing is that *if* he is released from prison, is convicted of another crime and is incarcerated in the Daugherty County Jail, he might again be subject to disciplinary confinement without due process. In a similar fact situation, the Court in *O'Shea* found the threat was not "sufficiently real and immediate to show an existing controversy simply because [the plaintiffs] anticipate violating lawful criminal statutes and being tried for their offenses . . . ." *Id.* 94 S.Ct. at 676. *O'Shea* was recently reaffirmed in *City of Los Angeles v. Lyons,* —— U.S. ——, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), where the Court held that a plaintiff's assertion that he may again be subject to an illegal police chokehold is too speculative to create an actual controversy sufficient for a declaratory judgment to be entered. *Id.* at 1666, 1669.

Dudley's standing to seek equitable relief as the representative of a class action, however, presents a different issue. The Supreme Court has held that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim. *United States Parole Comm'n. v. Geraghty,* 445 U.S. 388, 100 S.Ct. 1202, 1212, 63 L.Ed.2d 479 (1980); *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 559, 42 L.Ed.2d 532 (1975). Moreover, the case is not rendered moot when class certification is denied in the district court. If the appeal results in reversal of the denial, and the class is subsequently certified, the merits of the claim may be adjudicated. *Geraghty,* 100 S.Ct. at 1212–13.

■ Under *Sosna,* if Dudley had been certified as an appropriate representative of a class, his case could continue on the merits. *See Franks v. Bowman Transp. Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444

(1976) (mootness turns on whether an adversary relationship sufficient to sharpen presentation of issues exists; adversary relationship may be found in unnamed class members). But until a class has been properly certified a plaintiff whose individual claim no longer exists may not continue to press the appeal on the merits. *Geraghty*, 100 S.Ct. at 1213; *see also Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980). Thus, until Dudley's class is certified, he may challenge the denial of certification, but he may not adjudicate the merits of his claim for equitable relief.

In summary, Dudley's claim for damages is not rendered moot by his transfer to the state penitentiary. His complaint presents a justiciable case or controversy for determination on the merits. His claim for injunctive and declaratory relief is moot unless the district court's denial of class certification was improper. Given our conclusion infra, however, that Dudley's claim was properly dismissed on summary judgment, we need not determine whether class certification was properly denied.

## II. *Due Process*

Dudley's claim on the merits is that he was subjected to solitary confinement in the Daugherty County Jail without notice or hearing in violation of the due process clause as construed in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). He alleges that the due process clause, standing alone, affords him some protection against being placed in solitary confinement. He has cited no state or county laws or regulations, or any jail practice or procedure, as the source of this right.

*Wolff* made clear that prisoners are not deprived of all due process rights when they enter the prison population. Although their rights may be diminished by the exigencies of the institutional environment, prisoners may claim a residuum of constitutional safeguards. *Id.* at 2974. The district court limited the applicability of *Wolff* to the specific facts of that case—the denial of "good time credits" for disciplinary reasons—and held that, since good time credits are not used in Daugherty County Jail, notice and hearing are not required before placing a county inmate in solitary confinement. The district court ruled that the due process clause itself does not invest prisoners with any procedural rights and that a prisoner's right to expect procedural safeguards before the imposition of disciplinary measures arises only if, as in *Wolff*, the state has created a statutory expectation of a liberty or property interest.

We disagree with the district court's ruling that *Wolff* does not apply to inmates in county jails. *Wolff's* procedural protections apply to the deprivation of any liberty interest, not only the forfeiture of good time credits in a state operated facility. *See Wolff*, 94 S.Ct. at 2982 n. 19. We discern no reason why inmates in county jails should not be afforded the same due process protections as inmates in state prisons. If a county inmate has a liberty interest in remaining in the general prison population, the principles of *Wolff* apply. *See Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981) (en banc) (constitutional safeguards apply to convicted individuals and pretrial detainees confined in county jail), *cert. dismissed*, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981). Nevertheless, we hold that convicted inmates are afforded no due process protections against the imposition of solitary confinement in the absence of some liberty interest created by the state. Because Dudley has alleged no state or county action granting him, in express or implied terms, an interest in remaining in the general prison population, we affirm the district court's order of summary judgment.

The Supreme Court in *Wolff*, although speaking at times in broad, general terms about a prisoner's constitutional rights, *see, e.g.*, 94 S.Ct. at 2974 ("no iron curtain drawn between the Constitution and the prisons of this country"), recognized McDonnell's right to due process only because the state had created the right to good time and itself had provided that the credits could not be withheld as a disciplinary measure except for major misconduct:

[T]he State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment "liberty" to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that the state-created right is not arbitrarily abrogated.

94 S.Ct. at 2975.

■ Contrary to Dudley's assertion, the Court did not recognize an inmate's right to due process prior to the imposition of disciplinary confinement in the absence of a state-created right. The Court did state in a footnote that its holding would apply to disciplinary confinement as well as the withholding of good time credits, but only because "under the Nebraska system, the same procedures are employed where disciplinary confinement is imposed. The deprivation of good time and imposition of 'solitary' confinement are reserved for instances where serious misbehavior has occurred." *Id.* at 2982 n. 19. The State of Nebraska had created the same liberty interest in remaining in the general prison population as it had for attaining good time credits. The State had assured its inmates that neither would be imposed unless serious misconduct had occurred. Dudley has asserted no similar assurance by the State of Georgia or Daugherty County.

The Court's most recent discussion of this issue was in *Hewitt v. Helms,* —— U.S. ——, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), which held that solitary confinement for administrative reasons does not involve an interest independently protected by the due process clause. *Id.* at 869. The Court recognized an inmate's protected liberty interest in remaining in the general prison population only because Pennsylvania statutes and regulations had set forth specific procedures for confining an inmate to administrative segregation. Addressing the protections afforded by the due process clause itself, the Court stated:

As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight.

*Id.* at 869 (quoting *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)).

Although *Hewitt* dealt only with segregation for "nonpunitive" reasons, it is consistent with previous decisions involving disciplinary measures imposed upon inmates. In addition to *Wolff,* the cases most analogous to the issue presented here are *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), and *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), both of which involved the transfer of inmates within a state's prison system. *Meachum* held that no due process liberty interest is infringed when a convicted inmate is transferred from one prison to another absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the appearance of other specified events. 96 S.Ct. at 2540. The Court cautioned that the day-to-day functioning of state prisons involves issues and discretionary decisions that are not the business of federal judges. *Id.*

The decision in *Montanye* took *Meachum* one step further and held that the due process clause does not afford an inmate any protection against transfers, "whether or not they are the result of the inmate's behavior or may be labeled as disciplinary or punitive." 96 S.Ct. at 2547. Significantly, the court of appeals in *Montanye* had held that Haymes' transfer involved a "real hardship" amounting to the infliction of additional punishment and that disciplinary transfers—"when harsh treatment is meted out to reprimand, deter, or reform an individual"—should be treated differently from administrative transfers. *United States ex rel. Haymes v. Montanye,* 505 F.2d 977, 980–82 (2d Cir.1974). The Supreme Court disagreed with both propositions and refused to hold that the due process clause by its own force applied to disciplinary transfers. Because the state had imposed no requirements or conditions on the discretionary

power of prison officials to transfer inmates for disciplinary or administrative reasons, the inmate possessed no protectable liberty interest. 96 S.Ct. at 2547.

This Circuit's treatment of the issue has not been entirely consistent. In *Parker v. Cook,* 642 F.2d 865 (5th Cir. Unit B 1981), the court began its analysis "with the proposition that the due process clause protects only those liberty interests created by the state." *Id.* at 867. It recognized Parker's due process rights only because Florida had promulgated an elaborate procedure for the imposition of disciplinary or administrative segregation. It also held that the State's labeling the confinement as administrative or disciplinary would not affect a prisoner's due process rights. *Id.* at 875.

Although *Parker* strongly suggests that the due process clause protects only state-created liberty interests, by observing that "some Supreme Court cases" can be construed to protect interests other than those created by the state, the court did not definitively foreclose the issue. *Id.* at 867 n. 1. The court did not cite any such cases, but an en banc decision of the Fifth Circuit, decided four months before *Parker,* held, citing *Wolff* without mentioning any state-created interest, that prisoners confined to a "padded cell" as a disciplinary measure without any kind of hearing in a county jail were denied due process of law. *Jones v. Diamond,* 636 F.2d 1364, 1374 (5th Cir.1981) (en banc), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).[1] Dudley cites *Jones* as conclusively holding that the due process clause, standing alone, protects prisoners against the imposition of disciplinary confinement without a hearing. *See also Smith v. Rabalais,* 659 F.2d 539, 543 (5th Cir. Unit A 1981) (transfer to maximum security is "obviously a deprivation of 'liberty'" and entitles prisoner to minimal due process, citing *Wolff* ), *cert. denied,* 455 U.S. 992, 102 S.Ct. 1619, 71 L.Ed.2d 853.

We decline to view *Jones* as determinative of the issue for two reasons. First, it is not clear that *Jones* recognized an independent liberty interest arising out of the Constitution itself. Although the court did not mention any state-created interest, it was not presented with the precise question whether a prisoner's liberty interest need be created by some state action. Rather, it summarily concluded, in a one paragraph statement, that the "practices" of the county sheriffs violated the prohibition of disciplinary punishment without due process. 636 F.2d at 1374. These practices consisted of segregating inmates and restricting visitation privileges when the offense constituted a violation of posted jail rules and when the infraction was "serious enough." *Id.* at 1372. Since such an established practice could be viewed as giving prisoners a justifiable expectation that they would remain in the general prison population unless they commit a serious violation of the posted rules, *Jones* is not inconsistent with our decision here. *See Wolff,* 94 S.Ct. at 2982 n. 19 (disciplinary confinement is subject to due process under the Nebraska system because it is "reserved for instances where serious misbehavior has occurred"). Dudley alleges no such limits on the discretionary power of county jailers to place him in segregated quarters.

A second reason for not treating *Jones* as dispositive of this issue is that the decision, if construed as Dudley contends, would be contrary to the Supreme Court precedent set forth in *Wolff, Hewitt, Meachum* and *Montanye.* Those cases make clear that the only liberty interests protected by the due process clause are those created through some state action.

■ Our holding does not mean that a prisoner must point to a specific statute or regulation granting him a liberty interest.[2] As we stated in *Parker:*

*See, e.g., Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1978) ("if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment and may not constitutionally be inflicted

---

1. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

2. Nor does it mean that prison officials are at liberty to treat inmates in an arbitrary fashion.

**1498**

Since states rarely if ever explicitly label their creations as "liberty interests," we must look to the substance of the state action to determine whether a liberty interest has been created. And whether this substance is embodied in a constitution, statute, regulation, rule, or practice is of no significance....

642 F.2d at 867.

Thus, even if a state by statute or regulation refuses to grant inmates certain liberty interests, the practices of state or county officials may nevertheless give rise to those same interests. Dudley has not pointed to any statute, regulation, rule or practice that might be construed as giving him a protected liberty interest. We must therefore uphold the district court's grant of summary judgment in favor of the defendants. AFFIRMED.

upon detainees ..."); *Parker v. Cook,* 642 F.2d 865, 873 n. 6 (5th Cir. Unit B 1981) (state may not arbitrarily segregate inmates); *Cruz v. Beto,* 603 F.2d 1178 (5th Cir.1979) (prison officials may not arbitrarily segregate inmates because they are clients of a certain attorney).