**John A. WASHINGTON,
Plaintiff–Appellant,**

v.

**Richard L. DUGGER, G.S. Fortner, et
al., Defendants–Appellees.**

**No. 87–3342.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 28, 1988.

Rehearing and Rehearing En Banc
Denied Jan. 5, 1989.

Gardner F. Davis, Jacksonville, Fla., for plaintiff-appellant.

Robert A. Butterworth, Atty. Gen., Dept. of Legal Affairs, Carl J. Zahner, Cecilia Bradley, Asst. Attys. Gen., Tallahassee, Fla., for defendants-appellees.

Before ANDERSON and COX,
Circuit Judges, and TUTTLE, Senior
Circuit Judge.

TUTTLE, Senior Circuit Judge:

John A. Washington, an inmate in the Florida prison system, appeals from an or-

der of the district court granting summary judgment for all defendants in this Civil Rights action brought pursuant to 42 U.S. C. § 1983. In his complaint, Washington alleged that he had suffered pain and permanent injury from the defendants' "deliberate indifference to Washington's serious medical needs" while at the Lawtey Correctional Institute in the State of Florida.

## I. COURSE OF PROCEEDINGS BELOW

Plaintiff filed his complaint, acting *pro se*, alleging that he was suffering from Agent Orange disease. He alleged inadequate medical care by the prison officials, the appellees herein. He filed concurrently a motion for a temporary restraining order and preliminary injunction.

On November 28, 1986, the district court denied plaintiff's motion for a temporary restraining order and referred the motion for preliminary injunction to the United States magistrate for an evidentiary hearing. At the conclusion of the hearing, the magistrate offered the plaintiff an opportunity to supplement the record with any additional evidence he might have concerning the correction officials' wrongful refusal to allow him to remain at the Veterans Administration Hospital for treatment of Agent Orange disease.

On January 6, 1987, the defendant filed a motion for summary judgment. On February 27, 1987, the magistrate filed his report to the district court recommending that the plaintiff's motion for preliminary injunction be denied and that defendants' motion for summary judgment be granted. On May 8, the district court overruled the plaintiff's objections to the magistrate's report and recommendation. It adopted the magistrate's recommendation denying the plaintiff's motion for preliminary injunction and granted defendants' motion for summary judgment.

This appeal followed.

## II. STATEMENT OF FACTS

The record before the trial court that was appropriate for it to consider deciding the motion for summary judgment, *i.e.*, the affidavits, the testimony at the hearing for preliminary injunction, and the sworn complaint of the plaintiff, showed the following:

Washington is a veteran of the Viet Nam conflict who was found by the Veterans Administration to be suffering from disabilities which the Administration found were service connected. He was treated as a veteran who had been exposed to "herbicides." He had been treated in Veterans Administration hospitals in several cities around the country, beginning as early as 1976. The medical records from these visits, which included both inpatient and outpatient treatment, disclosed that during the entire period of time up until the filing of this action, his disabilities included the following: pydoerma with cellulitis and lymphaginitis, in his lower extremities. From time to time the records disclose that Washington had lesions and open pustules on his legs. The treatment administered and recommended to be followed upon discharge, as reflected by the Veterans Administration's medical records from Gainesville, Florida, Houston, Texas, New Orleans, Louisiana and Tuskegee, Alabama, as well as by a private doctor in Pensacola, Florida, remained fairly constant.

These medical records were submitted to the appropriate Florida officials when Washington was placed in the custody of the Department of Corrections on September 26. While at the Reception and Medical Center (RMC), the doctors there told Washington that due to the complexity of his disease they were unable to treat him but would arrange appointments for him to see a dermatologist and an internist. His first appointment with the dermatologist took place approximately six weeks after his arrival at RMC.

Treatment by the dermatologist caused serious and potentially dangerous side effects and was discontinued. The internist, whom he saw next, stated that he had no understanding as to why Washington should have been sent to him, and he was sent back to the dermatologist. Thereafter, the plaintiff repeatedly asked the

medical personnel at RMC to arrange for his transfer for diagnosis and treatment to the Veterans Administration Hospital in Gainesville, Florida. Finally, after having communicated with non-medical prison officials, an appointment was arranged for him to visit the VA Hospital on December 26, exactly three months after he had first arrived at RMC. Following a stay of approximately a week in the VA Hospital, he was returned to the correctional institution at Lawtey. He was told, as was the security officer accompanying him, that if Washington's lesions continued to erupt and become infected, he should immediately return to the VA Hospital for treatment. When spontaneous eruptions later occurred, he went to the prison medical clinic and requested that he be sent back to VA for treatment. This was met by a refusal. However, he was sent back for further treatment on April 10, 1987. His medical file records include a letter from the Veterans Administration stating: "When lesions are spontaneously draining, appear infected, or if significant fever is present it is imperative that he be transported to the VA Medical Center in Gainesville for appropriate medical care." Washington suffered severe pain and discomfort during the period before he was sent back to the VA in Gainesville.

Among the instructions and prescriptions given by the VA, was an instruction that he should have contamination bags and medically prescribed white clothing for use in the prison. On January 10, 1986, a medical technician at Lawtey, William Reeder, made him discard the contamination bags and the other medically prescribed clothing. Again, on January 13, 1986, he was denied access to these articles which a doctor had said were necessary.

The dermatologist at the VA prescribed Domeboro soaks to relieve the inflammation of plaintiff's legs. He was sent by the institution at Lawtey to RMC daily for these soaks. However, on several occasions, he discovered upon arrival that the Domeboro solution, the medication, was not available. On at least one occasion, the medicine was not available for a period of five days.

Appellant testified that the only medication which has had any positive effect on his condition is Grifulvin. The dermatologist at the VA stated that she would not prescribe this medication without a complete workup of Washington as a patient of the VA Hospital, but he was denied by the medical personnel at Lawtey the opportunity to remain in the VA Hospital long enough for this testing.

## III. DISCUSSION

We have before us an appeal from the granting by the trial court of a motion for summary judgment by the defendants. In such a situation, we apply the same legal standards as those which control the district court in determining whether summary judgment is appropriate. *American Viking Contractors, Inc. v. Scribner Equipment Co., Inc.*, 745 F.2d 1365 (11th Cir. 1984). We evaluate whether the moving party has met its burden of showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, F.R.C.P. 56. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether a movant has met this burden, we review the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970). As this Court has said:

All reasonable doubts about the facts are resolved in favor of the non-movant. *K.C. Enterprises v. Am. Hardware Mutual Ins. Co.*, 655 F.2d 598, 602 (5th Cir.1981). If reasonable minds might differ on the inferences arising from undisputed facts, then a court should deny summary judgment. *Impossible Electronics Techniques, Inc. v. Wackenhut Protective System, Inc.*, 669 F.2d 1026, 1031 (5th Cir.Unit B 1982)....

*Mercantile Bank & Trust Co. v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985).

Moreover, this Court has said: "Ordinarily, summary judgment should not be grant-

ed in cases where motive, intent, subjective feelings, and reactions are to be searched...." *Rogers v. Evans*, 792 F.2d 1052, 1059 (11th Cir.1986).

Applying these standards, we reverse the trial court's judgment as to some, but not all, of the defendants below.

Deliberate indifference to serious medical needs of prisoners violates the Eighth Amendment prohibition of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

This Court has stated:

The indifference can be manifested by prison doctors in taking the easier and less efficacious route in treating an inmate. *Williams v. Vincent*, 508 F.2d 541 (2nd Cir.1974). If prison guards delay or deny access to medical care or intentionally interfere with treatment once prescribed, the Eighth Amendment is violated. *Estelle*, 429 U.S. at 104–05, 97 S.Ct. at 291–92. Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the Eighth Amendment. *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3rd Cir.1970).

*Rogers v. Evans, supra,* at 1058.

The undisputed facts as represented by the medical records of the plaintiff show a long continuing service connected injurious condition that time and time again resisted the treatment by palliatives. In fact, the records disclosed a systemic condition that during the 16 years covered by the records, defied adequate prognosis and treatment. Washington himself conceded that if he was suffering from Agent Orange disease or as technically known "herbicide exposure" no complete cure was possible. The medical records demonstrated, however, that certain treatments eliminated pain and suffering at least temporarily.

The record fully discloses that Washington was a constant complainer of the penal system in which he was incarcerated. It is understandable, therefore, that the reaction of those criticized may have resulted in inaction from time to time that was actually harmful to the plaintiff. However, there is nothing in the record to indicate that the prison officials had found Washington to be a malingerer. Nor, of course, could any dereliction of the defendants be justified as being in retaliation to his complaints.

While the facts as outlined above, were not at all undisputed, they were facts that could well have been found to be true by a factfinder. Certain facts, particularly those relating to the failure of the medical personnel at Lawtey to send plaintiff back to the VA in Gainesville when open lesions occurred are undisputed as is the failure of the Lawtey medical personnel to have adequate supplies of the one solution which alleviated the condition and relieved the pain from which Washington was suffering. This is not a case, as contended by the defendants, of a disagreement with the prison authorities as to the appropriate care to be provided. It is undisputed that the provision for the Domeboro soaks was agreed to and fully understood by the defendants. Moreover, it is clear from the court's decision in *Estelle, supra,* and the cases cited therein that the medical need of the prisoner need not be life threatening. In fact, the Court in *Estelle* held that a deliberate indifference to serious medical needs of prisoners was a violation of the Eighth Amendment because it amounted to the "unnecessary and wanton infliction of pain."

Washington's complaint against defendants Dugger, Fortner, Makant and Metheney is not supported on the record by any evidence which would permit a factfinder to find their participation in any deliberate indifference to his medical needs. Of course, these persons cannot be held liable under Section 1983 on the basis of respondeat superior. The judgment of the trial court, as to them, must therefore be AFFIRMED.

Since, however, there was more than sufficient evidence of record from which a factfinder might determine the existence of such deliberate indifference by the remaining defendants, the judgment of dismissal as to Sands, Nguyen Hiep, Norman, Baker, Reeder and Jordan is REVERSED.