Eddie Lee WILSON a/k/a Carl
Sanderson, Petitioner,

v.

Dr. George FRANCESCHI, Mr. Deloye
B. Henry, Defendants.

No. 89–739–Civ–T–17C.

United States District Court,
M.D. Florida,
Tampa Division.

Feb. 5, 1990.

Eddie Lee Wilson a/k/a Carl Sanderson, pro se.

Kimberly J. Tucker, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## ORDER

KOVACHEVICH, District Judge.

THIS CAUSE is before this court upon receipt of the report and recommendation of Magistrate Elizabeth A. Jenkins recommending that Defendants' motion for summary judgment in the above styled petition be GRANTED with respect to the claim for injunctive relief sought and DENIED with respect to the claim for compensatory damages. All parties have previously been furnished copies of the report and recommendation and have had an opportunity to file objections pursuant to 28 U.S.C. § 636(b)(1).

Defendants raise two arguments in their objection to the magistrate's report and recommendation. First, Defendants claim that since Plaintiff was not entitled to receive AZT prior to August 3, 1989, the delay in transfer was irrelevant to Plaintiff's eighth amendment claim.

Second, since plaintiff's allegations of nontreatment of skin rashes and sores were not contained in Plaintiff's complaint, Defendants had no opportunity to contradict those allegations. Therefore, Defendants request to be advised whether the court will *sua sponte* amend the complaint and, if so, that Defendants be provided thirty days to file an amended Motion for Summary Judgment.

## STANDARD FOR SUMMARY JUDGMENT WHEN A DEFENDANT ASSERTS A QUALIFIED IMMUNITY DEFENSE

A state official performing a discretionary function and asserting a qualified immunity defense is shielded from liability for damages unless his conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Whether an official asserting qualified immunity is immune from suit is determined by the " 'objective reasonableness' of his action assessed in light of the legal rules that were 'clearly established' at the time it was taken."

*Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987) (*quoting Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738). In *Anderson,* the United States Supreme Court further explained:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Id.* 107 S.Ct. at 3039 (citations omitted). Further, "Once a defendant advances a defense of qualified immunity, he is entitled to summary judgement unless 'the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions....'" *Edwards v. Gilbert,* 867 F.2d 1271, 1273 (11th Cir.1989) (*quoting Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)). Therefore, on motion for summary judgment, a court must determine whether a given action is objectively legally reasonable "in light of clearly established law and the information the ... [official] possessed." *Anderson,* 107 S.Ct. at 3040.

## CONTOURS OF THE RIGHT

■ In the medical context, a violation of the eighth amendment's prohibition of cruel and unusual punishment is established by showing an official's conduct consists of "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Intentional denial or intentional delay of access to medical care manifests deliberate indifference as well as intentional interference with prescribed treatment. *Id.* at 104, 97 S.Ct. at 291. The Eleventh Circuit defines deliberate indifference as that conduct which is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness," or "so inappropriate as to evidence intentional maltreatment or a re-

fusal to provide essential care." *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir.1986); *Edwards v. Gilbert,* 867 F.2d 1271 (11th Cir.1989).

## UNDISPUTED FACTS

From January, 1989, to August 3, 1989, the medical community was divided concerning the efficacy of treatment of early ARC patients with AZT. At that time, both the CDC and the manufacturer's guidelines recommended AZT only for patients with AIDS or advanced ARC. However, some physicians and researchers had reported longer life spans for patients who were treated with AZT earlier in the course of the disease.

In line with the recommendation of the CDC and the manufacturer, the Florida Department of Corrections administered AZT only to prisoners with AIDS or advanced ARC. AZT was dispensed at two correctional facilities, one for males and one for females. To qualify for transfer to a facility for AZT treatment, a prisoner had to be acutely ill with advanced ARC or be diagnosed as having AIDS. From the time plaintiff requested AZT to August 3, 1989, plaintiff's diagnosis was not advanced ARC or AIDS. Nor was plaintiff acutely ill during that time. Therefore, according to then prevailing prison guidelines, plaintiff did not qualify for a transfer or treatment with AZT.

Despite the fact that the plaintiff was not qualified to receive AZT under then prevailing prison guidelines and therefore could not receive a medical transfer for treatment, the record shows Dr. Franceschi made some effort to obtain AZT for the plaintiff. Though Dr. Franceschi was unsuccessful, plaintiff received AZT once the CDC and manufacturer's recommendation was changed in August, 1989.

The record further shows that though Mr. Henry was the classifications officer, he was not responsible for medical transfers.

## DISCUSSION

In this case, Plaintiff asserts that the delay in receiving the drug AZT for treat-

ment of his early ARC symptoms, thereby possibly shortening his life expectancy, was a violation of the eighth amendment's prohibition of cruel and unusual punishment. Defendants are immune from suit unless the law was clearly established in January, 1989, that a delay in fulfilling a prisoner's request for treatment with AZT violated a prisoner's eighth amendment rights because the delay constituted grossly incompetent or inadequate medical care that shocked the conscience, was intolerable to fundamental fairness, or was so inappropriate as to constitute intentional maltreatment or refusal to provide essential care. This determination should be made in light of the circumstances and information extant at the time.

■ Since the medical community itself was divided as to the appropriate treatment to be afforded patients suffering from early ARC, the delay in plaintiff's AZT treatment was not an act or omission that was grossly incompetent or shocks the conscience, and does not constitute inadequate medical care. At that time the efficacy of treating early ARC patients with AZT was not known; delay in treatment cannot therefore be judged fundamentally unfair. Finally, the uncertainty within the medical community made it unlikely that Dr. Franceschi would have known that such a delay clearly constituted a violation of plaintiff's eighth amendment rights.

■ Further, the record shows that plaintiff was seen by the physician once a week. Dr. Franceschi prescribed Atarax for the plaintiff's itchiness. Later, when the plaintiff was further examined by Dr. Navarone, no excoriations, rash, or scratching was observed. Itching does not constitute a "serious medical need". The record shows that medication was prescribed. Although the medication was perhaps ineffective, this does not establish inadequate medical care that rises to the level of a violation of the eighth amendment.

Therefore, the Court finds that Dr. Franceschi is immune from suit.

■ The record shows that Mr. Henry was not responsible for medical transfers. Therefore, even if Plaintiff were qualified for a medical transfer, the delay was not caused by Mr. Henry's conduct. Therefore, The Court finds that Mr. Henry is immune from suit.

Accordingly, it is now

ORDERED:

(1) The magistrate's report and recommendations be ADOPTED with respect to the claim for injunctive relief and OVERRULED with respect to the claim for compensatory damages, and

(2) the Defendants' motion for summary judgment be, and hereby is, GRANTED and the petition is DISMISSED.

DONE AND ORDERED.

## APPENDIX

### REPORT AND RECOMMENDATION

THIS CAUSE is before this Court pursuant to defendants' motion for summary judgment (Dkt. 11) and plaintiff's motion to dismiss. (Dkt. 14).[1]

Eddie Lee Wilson, plaintiff, filed this *pro se* action based on Title 42, United States Code, section 1983. Plaintiff's cause of action arises from an alleged denial of medical care at Polk Correctional Institution (Polk). Plaintiff names as defendants Dr. George Franceschi, chief health officer at Polk, and Deloye B. Henry, chief classification specialist at Polk.

### I

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court noted that the moving party bears the initial responsi-

1. This matter has been referred to the undersigned by the district court for consideration and a Report and Recommendation. *See* Local Rules 6.01(b) and 6.01(c)(18), M.D.Fla.

bility of identifying which portions of the documents on file it believes demonstrate the absence of a genuine issue of material fact, but the moving party does not have to support its motion with materials negating the opponent's claim. *Id.* 477 U.S. at 323, 106 S.Ct. at 2552. The moving party only must show an "absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2553. The nonmoving party must designate "specific facts showing that there is a genuine issue for trial," but not necessarily produce evidence in a form that would be admissible at trial. *Id.* at 324, 106 S.Ct. at 2553.

The following are the relevant, material and undisputed facts of record in the instant case. Plaintiff Eddie Lee Wilson, was an inmate at Polk Correctional Institution (Polk) when this complaint was filed. Since at least 1985, plaintiff has been infected with the human immunodeficiency virus (HIV), which causes acquired immune deficiency syndrome (AIDS). Plaintiff was examined by defendant Franceschi, chief health officer at Polk, in January 1987 or 1989.[2] Plaintiff has AIDS-related complex (ARC) but not AIDS. In January 1989, on defendant Franceschi's recommendation, plaintiff applied for treatment with the medication zidovudine,[3] commonly called AZT. On February 21, 1989, plaintiff received a reply from defendant Franceschi stating that the request for treatment with AZT required classification for treatment at the Reception and Medical Center at Lake Butler. (Dkt. # 1). On April 4, 1989, plaintiff was notified that defendant Franceschi had sent a memorandum to Classification regarding the request for treatment and the transfer. (Dkt. # 14). Plaintiff was notified on May 24, 1989 that defen-

dant Franceschi had requested a consultation for the plaintiff with the staff at the Reception and Medical Center at Lake Butler, and plaintiff was told that he would be transferred only if it was "medically approved."

On August 3, 1989, the United States Department of Health and Human Services announced changes in the standard for treatment with AZT, based on a study involving HIV-infected patients with early ARC who had not yet been diagnosed with AIDS. The standard was revised on the basis of a study showing that AZT was effective in slowing the progression of ARC in patients with early symptomatic HIV infection.

Plaintiff's blood was tested August 7, 1989, and on August 22, 1989, an appointment was scheduled for plaintiff to be evaluated for AZT treatment. Dr. Joseph Paris, chief health officer at Union Correctional Institute (Union), began treating plaintiff with AZT on August 29, 1989.[4] (Dkt. # 11, Defendants' Exhibit B). In an affidavit dated September 15, 1989, Dr. Paris stated that the standard of care for early ARC patients such as the plaintiff did not include AZT treatment until the Centers for Disease Control promulgated new guidelines in July and August 1989. Dr. Paris also stated that because AZT was administered shortly after the new standard of care was known, no breach in medical care occurred. (Dkt. # 11, Defendants' Exhibit B). Plaintiff alleges that he has been denied necessary medical treatment in the form of the drug AZT as well as a transfer to a correctional facility equipped to treat inmates infected with the HIV virus. Plaintiff requests that the Court order the "necessary and requested treat-

---

**2.** Although plaintiff's complaint states the date of the examination as January 1987, this appears to be a typographical error as all other references in the complaint are to dates in 1989. However, even if the January 1987 date is correct, that would not alter the conclusions in this report and recommendation because the gravamen of plaintiff's section 1983 complaint is the failure to prescribe AZT for his condition and as discussed, *infra*, AZT was not normally prescribed for conditions such as plaintiff's prior to

August 1989, when guidelines for its use were revised.

**3.** According to defendants, AZT is also manufactured under the brand name Retrovir.

**4.** Although plaintiff's exact date of transfer from Polk to Union is unclear from the materials submitted, it is apparent that the transfer was no later than August 29, 1989, the date the AZT treatment commenced.

ment," award compensatory damages of $200 per day for each day he was denied treatment, and expedite the requested treatment. (Dkt. 1 and correspondence filed June 8 and 13, 1989). Plaintiff has since received the requested transfer and treatment (Dkt. 11).

## II

Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56 on the grounds that plaintiff's claims for injunctive relief in the form of a transfer and the administration of the drug AZT are moot because plaintiff has been transferred to the facility requested and has been receiving the drug since August 29, 1989. Defendants also claim that they were not deliberately indifferent to plaintiff's medical needs and that they are entitled to qualified immunity.

The Eleventh Circuit Court of Appeals has held that in the absence of class certification, an inmate's claim for equitable relief fails to present a case or controversy under Article III of the United States Constitution if he is subsequently transferred as requested. *Dudley v. Stewart,* 724 F.2d 1493, 1494 (11th Cir.1984). Although *Dudley* concerned a transfer from a county jail to a state prison rather than a transfer within the prison system, the claim is clearly mooted if it is unaccompanied by a "continuing, present injury or real and immediate threat of repeated injury." *Id.* at 1494, citing *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). The court in *Dudley* also held that the granting of a requested transfer does not moot an inmate's claim for damages. 724 F.2d at 1494.

In view of the granting of the transfer and treatment requested by the plaintiff and the absence of any showing that repeated injury is threatened immediately, the motion for summary judgment on the claims for injunctive relief should be granted.

## III

For a complaint of improper medical treatment to state a cognizable section 1983 claim, the prisoner must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Although defendants agree that AIDS-related complex is a "serious medical need," they note that prior to August 3, 1989, plaintiff did not meet the criteria for treatment with AZT under either the drug manufacturer's guidelines or those promulgated by the federal Centers for Disease Control.

After the United States Department of Health and Human Services revised the criteria for treatment with AZT, plaintiff was scheduled for evaluation August 22, 1989, and began treatment August 29, 1989. Because the use and efficiency of drugs to treat AIDS and AIDS-related complex is still at an early stage, there are few cases addressing whether a denial of medication such as AZT constitutes "deliberate indifference." There are no published opinions on the issue from the Eleventh Circuit.

In *Glick v. Henderson,* 855 F.2d 536 (8th Cir.1988), the court considered the case of inmates who sought protection from prisoners with AIDS and noted that "[i]t is the rare case in which a court should venture forth to establish medical procedures and guidelines in an area where the medical profession has not yet been able to ascertain what they should be." *Id.* at 541. The plaintiffs in *Glick* filed a section 1983 civil rights complaint alleging that the state failed to protect them from contracting the virus from infected prisoners. The complaint was dismissed with prejudice because it failed to provide "the slightest indication of what the officials are doing or not doing that is not in accord with proper practice as established by medical guidelines." *Id.* at 539.

The Eleventh Circuit found facts that could have established "deliberate indifference" in a similar case involving medical treatment denied to an inmate who had

ailments caused by exposure to a herbicide. *Washington v. Dugger,* 860 F.2d 1018 (11th Cir.1988), *en banc reh'g denied,* 866 F.2d 1420 (11th Cir.1988). In *Washington,* the defendant prison officials agreed to provide a treatment to reduce the plaintiff's pain and then failed to maintain an adequate supply of the medication. *Id.* at 1021.

In the instant case, it appears that defendant Franceschi initiated procedures for obtaining AZT treatment for the plaintiff in January 1989.[5]

Because plaintiff has been transferred and is receiving AZT, the issue becomes whether failure to treat him with AZT prior to August 1989 could establish deliberate indifference supporting his damages claim. The Court in *Estelle v. Gamble* held that intentional interference with "treatment once prescribed" constitutes an Eighth Amendment violation. *Estelle,* 429 U.S. at 104–05, 97 S.Ct. at 291. In addition, plaintiff alleged that Dr. Franceschi failed to treat rashes and sores despite the plaintiff's constant complaints. (Dkt. # 7) Although Dr. Paris found no rashes or excoriations during the August 29, 1989 examination, failure to treat such a condition several months earlier could state a claim upon which relief may be granted.

With his Motion to Dismiss Defendants' Request for Summary Judgment, plaintiff enclosed correspondence showing that as early as March 30, 1989, defendant Franceschi told plaintiff his request had been processed and he would be receiving information prior to starting the AZT treatment. That correspondence included a hand-written addendum from Franceschi that appears to say that he has information that "will have influence [on] the above statement" and that he would explain it to the plaintiff. (Dkt. # 14, Correspondence dated March 30, 1989.)

As for classification specialist defendant Henry, plaintiff must establish his participation in any deliberate indifference to plaintiff's medical needs in violation of the Eighth Amendment. *See Washington v. Dugger, supra,* at 1021. There is no explanation as to why plaintiff's request for transfer made in January was not granted until August. The Eleventh Circuit has recognized that delaying necessary medical treatment for non-medical reasons constitutes a case of deliberate indifference, and it cited a case from the Second Circuit in which a delay of five hours was held to give rise to a cause of action. *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704 (11th Cir.1985), *citing Archer v. Dutcher,* 733 F.2d 14, 17 (2d Cir.1984).

Although in correspondence dated May 22, 1989, accompanying plaintiff's "Motion to Dismiss Defendants' Request for Summary Judgment" (Dkt. 14), plaintiff is told that Mr. Henry is not handling plaintiff's transfer, an explanation for the length of time it took to effect the transfer cannot be determined from the submissions of the parties. The length of delay alone could persuade a finder of fact to find "deliberate indifference" on the part of a prison official with the authority to effect a transfer or to administer treatment.

Plaintiff has shown there is "a genuine issue as to a material fact," specifically with respect to the delay in his receiving treatment, and defendants have failed to show an absence of evidence to support the plaintiff's case. Therefore, the motion by defendants Franceschi and Henry for summary judgment on the claim for damages should be denied.

## Conclusion

Defendants' motion for summary judgment on the injunctive claims should be granted because they are moot and plaintiff has shown no immediate threat of re-

---

**5.** In response to a June 5, 1989 order, the defendants indicated that Dr. Franceschi sought AZT treatment for the plaintiff in January. When he was told AZT was not available at Polk, he initiated the procedure to transfer plaintiff to the Reception and Medical Center at Lake Butler and subsequently made several telephone calls inquiring about the status of the transfer. It is unclear from the submissions by the defendants, however, exactly what steps were taken to obtain AZT for the plaintiff and defendants' Motion for Summary Judgment did not include affidavits from either Dr. Franceschi or Henry.

peated injury. Defendants' motion for summary judgment on the damages claim should be denied because defendants failed to show an absence of evidence to support the nonmoving party's case.

It is respectfully RECOMMENDED that:

(1) The defendants' motion for summary judgment be GRANTED with respect to the injunctive relief sought, and

(2) The defendants' motion be DENIED with respect to the claim for compensatory damages.

Respectfully submitted,

/s/ Elizabeth A. Jenkins

Elizabeth A. Jenkins

United States Magistrate

Dated: December 22, 1989.

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).