[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11263
Non-Argument Calendar
_____

D.C. Docket No. 5:12-cv-00001-RS-EMT

JAVEED ATTIQUE QAMAR,

Plaintiff-Appellant,

versus

CENTRAL INTELLIGENCE AGENCY,
BAY COUNTY JAIL,
BAY COUNTY SHERIFF'S OFFICE,
TOM WEBBER,
Former PCBPD Officer,
RONALD LIPPMANN,
MD Jail DO,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(September 11, 2012)

Before MARCUS, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Javeed Qamar appeals pro se the dismissal of his complaint against the Central Intelligence Agency; employees of the Bay County Jail; officers of Sheriff's Office of Bay County; Dr. Ronald Lippmann; James Lee Spann, a former cellmate; and Tom Webber, a former investigator for the Beach Police Department of Panama City, Florida. See 42 U.S.C. § 1983. The district court dismissed Qamar's complaint as frivolous. 28 U.S.C. § 1915(e)(2)(B)(I). We affirm in part, vacate in part, and remand.

Qamar complained that the defendants engaged in misconduct that violated principles governing the treatment of individuals in the Geneva Convention, the United Nations Convention Against Torture, the International Covenant on Civil and Political Rights, and the Nuremberg Code; his rights under the Eighth and Fourteenth Amendments; federal laws prohibiting torture and sexual abuse, see 18 U.S.C. §§ 2340A, 2241–44; and Florida law, see Fla. Stat. §§ 777.04, 794.011, 794.027, 950.09. Qamar alleged that a nurse and jail officials denied him access to medications prescribed by physicians to treat his Raynaud's Disease and the symptoms of his drug withdrawal, and he later suffered a "string of seizures." He also alleged that the defendants engaged in a conspiracy to drug, rape, and torture

2

him; subjected him to "enhanced interrogations"; planted drugs on him; and gave some of his former acquaintances improper "access[] [to] the Jail."  Qamar alleged that the defendants tortured him by convincing him to sleep on the floor to watch Spann pretend to masturbate; allowing him to be raped in order to "plant evidence anally on [him]"; injecting him with crack cocaine; allowing Webber to enter Qamar's cell dressed as a jail officer; giving an inmate housed in the next cell an "earpiece that fit in the ear from a box" that projected "Dr. Lippman's voice threatening to rape [Qamar] with different objects"; subjecting him to constant talking and yelling between two female officers; and allowing a "former manager" to tell Qamar through the intercom in his cell that he should be killed.  Qamar described his condition at times as being "bar[el]y conscious" and "slip[ping] in and out of [a] coma," and he recalled being told that he had crack cocaine in his system.

Qamar alleged that the Central Intelligence Agency was involved in the conspiracy to mistreat him.  Qamar identified three reasons why he thought the Agency was "involved" in his mistreatment: 1) he was given injections; 2) the Agency denied his request for information under the Freedom of Information Act "on the basis that classified information is exempt"; and 3) the jail employed "known tactic[s] of [the Agency] [in] enhanced interrogations."  Qamar alleged

3

that the "tactic[s]" used by the defendants involved giving him injections; threatening to give him an enema; providing a false reason for his arrest; allowing inmates to ask him "questions implying that [he] was responsible for things [he] [had] never done"; housing him in a cell kept extremely cold; and threatening to give him truth serum; and playing through the loudspeaker some music with a "reverb sound effect saying [repeatedly] the word trip."

We review the dismissal of a pro se complaint as frivolous for an abuse of discretion. Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002). "Discretion means the district court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law." Zocaras v. Castro, 465 F.3d 479, 483 (11th Cir. 2006) (internal quotation marks and citations omitted).

The district court did not abuse its discretion when it dismissed as frivolous Qamar's complaints involving enhanced interrogation, torture, rape, the administration and false planting of drugs, and the admission of non-authorized individuals inside the jail. A court may dismiss a complaint as frivolous when the facts alleged "rise to the level of the irrational or wholly incredible" or lack an "'arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 33, 112 S. Ct. 1728, 1734 (1992) (quoting Neitzke v. Williams, 490 U.S. 319, 327–28,

4

109 S. Ct. 1827, 1833 (1989)).  The district court was entitled to find that Qamar's factual allegations were fantastical and implausible, particularly in the light of his admissions about being unconscious; denied access to medication used to treat the symptoms of drug withdrawal; and under the influence of crack cocaine.  Qamar alleged that the Central Intelligence Agency was involved in his mistreatment, but Qamar failed to explain why the Agency would intervene in the operations of a county jail or have any interest in Qamar.  Qamar alleged that he was raped and that jail guards were present before and after the rape, but it is impossible to determine from his complaint who he thought committed the offense and whether he was alleging that the guards sexually assaulted him or were deliberately indifferent to the risk that inmates would assault him.  Qamar's allegations that he was raped for officials to plant evidence of drugs and that he was mistreated as a form of enhanced interrogation by the Agency are incredible.

But the district court abused its discretion when it dismissed as frivolous Qamar's complaint about being denied access to his medication.  Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment, and prison officials act with deliberate indifference if they knowingly interfere with treatment prescribed by a physician.  Washington v. Dugger, 860 F.2d 1018, 1021 (11th Cir.

5

1988).  Qamar's allegations that he was denied access to medications prescribed by his physicians were plausible.  Qamar alleged that a "nurse in intake" refused to administer his prescription medication until he was seen by a doctor; the "jail medical report and . . . doctors own words" suggested he would suffer a seizure without the medicine; and he suffered a "string of seizures" before he met with Dr. Lippmann.  We **VACATE** that part of the order that dismissed Qamar's complaint about his medication.

We **AFFIRM** the dismissal of Qamar's complaint except his claim involving interference with his prescribed medication.  We **VACATE** the part of the order that dismissed Qamar's claim about that interference, and we **REMAND** for further proceedings.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

6