**Mechy F. WRIGHT, Plaintiff,**

v.

**CITY OF TAMPA, Defendant.**

**Case No. 97–408–CIV–T–17F.**

United States District Court, M.D. Florida, Tampa Division.

March 26, 1998.

James A. Sheehan, Law Office of James A. Sheehan, Nora Riva Bergman, Greenbaum & Bergman, St. Petersburg, FL, for Plaintiff.

Thomas M. Gonzalez, Charles J. Thomas, Kelly L. Soud, Thompson, Sizemore & Gonzalez, P.A., Tampa, FL, for Defendants.

### ORDER

KOVACHEVICH, Chief Judge.

This cause comes before the Court on Defendant, City of Tampa's, Motion for Summary Judgment (Docket No. 21) and Plaintiff's Memorandum in Opposition thereof (Docket No.42). Plaintiff is suing Defendant under 42 U.S.C. § 12101 *et seq.*, the Americans with Disabilities Act ("ADA"); 42 U.S.C.2000e *et seq.*, Title VII of the Civil Rights Act ("Title VII"); and 42 U.S.C. § 1983.

*FACTS* [1]

On June 25, 1978, Plaintiff was hired by Defendant as a firefighter. During the relevant time period encompassed by this lawsuit, Plaintiff was employed as a Fire Inspector. In 1988, Plaintiff was diagnosed with thrombocythemia, a blood disorder, which requires continued medical care. In addition, Plaintiff is required to take medication for the rest of her life as a result of her blood disorder. The side effects from the required medication include chronic headaches and fatigue. Plaintiff asserts that the side effects cause her to be absent form work approximately once per month. Since Plaintiff was diagnosed, she has requested that Defendant make certain accommodations in order to allow Plaintiff to continue working and meet the strains of her ailment. Plaintiff maintains that her supervisor, Bill Ryan, was aware of her disability.

On May 7, 1993, Plaintiff was involved in a boating accident which required surgery on her wrist. After this accident, Plaintiff was able to return to work; however, a lifting restriction was imposed. Despite her requests to be assigned to light duty work, Plaintiff was denied the opportunity to return to work. Moreover, Plaintiff was denied the use of time from Defendant's "sick bank" of accumulated time off from work. Prior to her wrist injury, Plaintiff was not required to perform the duties of a firefighter while she held the position of Fire Inspector. Plaintiff contends that none of the eighteen (18) Fire Inspectors working for Defendant are required to perform the duties of a firefighter.

Plaintiff asserts that, in the past, two (2) male firefighters have been assigned to light duty as Fire Inspectors after reporting injuries. Plaintiff maintains that she has complained to Defendant that her rights were being violated and filed a charge of discrimination based on sex, disability, and retaliation against Defendant in August, 1993. Plaintiff asserts that after filing the charge of discrimination, she was subjected to continued sex discrimination and retaliation by Defendant, through its agents and employees.

On or about June 21, 1995, Defendant used a scoring system to evaluate candidates who applied to fill vacant positions. Although the scoring system was commonly used, Plaintiff received an inaccurate score which she contends impeded her being promoted to the position of Assistant Fire Marshall. The Assistant Fire Marshall position was subsequently given to Melvin Stone, a male.

---

**1.** The facts are taken from Plaintiff's Second Amended Complaint and are presumed to be accurate for the purposes of the instant motion.

Plaintiff contends that she was more qualified for and had more experience than Mr. Stone when he received the promotion.

In late 1995, Plaintiff was eligible and qualified for a promotion to Fire Prevention Supervisor; however, the position was subsequently changed and was renamed Public Education Coordinator and was opened for civilian applications. Jamie Lewellen, a female, was subsequently promoted to the position of Public Education Coordinator from outside of the Fire Department.

Plaintiff maintains that from approximately March 1996, through June 1996, Inspector Carlos Llerandi, a male, was permitted to work as an inspector while on light duty, whereas, Plaintiff was denied a light duty position as Fire Inspector. In addition, during this same time period, Bruce Savage, a male, was permitted to use a cane while on light duty due to an injury which did not occur in the line of duty.

On July 21, 1996, Holly Boggs, a female, was promoted to the newly created position of Quality Management Officer even though Plaintiff was qualified for and eligible for said promotion. On July 26, 1996, Plaintiff informed Lydia Stork in Civil Services that the score she received when she was a candidate for the Assistant Fire Marshall position was inaccurate. Plaintiff was informed that she received a score of 80 rather than 90 because she failed to provide a college transcript. Nevertheless, Plaintiff contends that other male employees who did not provide college transcripts in conjunction with the promotional test, did not receive lower scores. Plaintiff subsequently provided a transcript and her score was changed to a 90.

On or about August 23, 1996, Todd Spear, a male, was promoted to Fire Marshall despite Plaintiff's contention that she was more qualified for and had more experience than Mr. Spear.

On or about January 10, 1997, Inspector Toy Pelaez, a male, was assigned to a project which had previously been assigned solely to Plaintiff. Plaintiff asserts that no officers or inspectors had ever been "dual assigned" to the same assignment and Plaintiff contends that this dual assignment was designed to undermine her credibility and cast doubt on her qualifications within the Fire Department. Moreover, Plaintiff asserts that Mr. Pelaez was given recognition and credit for Plaintiff's efforts. Plaintiff subsequently wrote two (2) memorandums to Fire Marshall Stone complaining of the dual assignment and requesting an explanation.

On or about March 26, 1997, Michael Gonzalez, a male, was promoted to Fire Prevention Division Manager. Plaintiff contends that she was eligible for the position of Fire Prevention Division Manager and was more qualified for and had more experience than Mr. Gonzalez.

*DISCUSSION*

Plaintiff asserts that Defendant, through its agents and employees, has engaged in, and ratified and condoned, a pattern, practice, and policy of acts which intentionally discriminated against Plaintiff on account of her sex and disability. Furthermore, Plaintiff asserts that Defendant, through its agents and employees, has retaliated against her for asserting her protected rights. Conversely, Defendant argues that there are no genuine issues of material fact that Plaintiff cannot show that defendant's decisions regarding the five promotions at issue, or the "dual assignment," were pretexts for discrimination or retaliation against her.

This circuit clearly holds that summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact, when all the evidence is viewed in the light most favorable to the nonmoving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Hayden v. First National Bank of Mt. Pleasant,* 595 F.2d 994, 995–97 (5th Cir.1979), quoting *Gross v. Southern Railroad Co.,* 414 F.2d 292 (5th Cir.1969). Material factual disputes preclude summary judgment.

The United States Supreme Court, in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), held:

In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discov-

ery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322.

Moreover, the Court stated, "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Id.* at 324. As the district court in *Coghlan v. H.J. Heinz Co.,* 851 F.Supp. 808 (N.D.Tex.1994), summarized:

> Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion,"...the nonmovant may not rest on mere allegations or denials in its pleadings; in short, "the adverse party's response...must set forth specific facts showing that there is a genuine issue for trial ." However, merely colorable evidence or evidence not significantly probative will not defeat a properly supported summary judgment...The existence of a mere scintilla of evidence will not suffice...(citations omitted) at 810–811.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## I. ADA CLAIMS

The ADA defines disability in part as "a physical or mental impairment that substantially limits one or more of the major life activities of an individual." 42 U.S.C. § 12102(2)(A). The Equal Employment Opportunity Commission's ("EEOC") regulations explain that, while a variety of physical and mental conditions constitute "impairments," an "impairment" is not a "disability" under the Act unless it substantially limits activities such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *See* C.F.R. app. §§ 1630.2(g)-(j). Pursuant to the regulations, blood disorders are impairments. Nevertheless, not every blood disorder rises to the level of a disability

subject to statutory protection. Moreover, temporary, non-chronic conditions are not covered by the Act.

■ Defendant asserts that Plaintiff cannot show that her condition and medications have affected her major life activity of working. Defendant argues that Plaintiff's symptoms from her thrombocythemia and side effects from the required medicines do not substantially impair her. Defendant argues that Plaintiff merely contends that her headaches and fatigue cause her to miss work once a month. Defendant argues that one absence from work per month is not, as a matter of law, a "significant" limitation and that such an attendance pattern is easily addressed by employer sick leave policies, or by the Family and Medical Leave Act. Defendant maintains that no one has ever suggested that Plaintiff is disqualified from performing her job or that her ability to work has been foreclosed in any material way. Moreover, Defendant maintains that Plaintiff's broken arm was a temporary, non-chronic condition which is not covered by the Act.

Conversely, Plaintiff argues that thrombocythemia is a condition that is capable of substantially limiting major life activities if left untreated by medication. Plaintiff cites *Harris v. H & W Contracting Co.,* 102 F.3d 516 (11th Cir.1996), for the proposition that Plaintiff's deposition testimony, regarding her required use of medicine, and matters subject to judicial notice, are sufficient to create a genuine issue of material fact about whether Plaintiff's medical condition, in the absence of mitigating measure, would substantially limit her major life activities.

The court in *Harris* analyzed the plaintiff's claim that she was "disabled" under the ADA as a result of Graves' disease, an endocrine disorder affecting the thyroid gland, despite the fact that her condition was completely controlled by medication. The court emphasized that the regulations require that the determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis, without regard to mitigating measures such as medicines, or assistive or prosthetic devices. *See Id.* at 520–21; 29 C.F.R. app. § 1630.2(j)

(1996). The evidence in the case at hand is similar to that in *Harris.* Plaintiff has provided excerpts from the *Merck Manual of Diagnosis and Therapy* (R. Berkow, et al. eds 16th ed.1992), which describes the symptoms and signs of thrombocythemia which include weakness, hemorrhage, nonspecific headache, paresthesias, and dizziness. Plaintiff also provided the Court with excerpts from *Cecil Textbook of Medicine* (J.B. Wyngaarden, M.D., et al. eds. 19th ed.1993), which explains the course and prognosis of the disease. In *Harris,* the Eleventh Circuit took judicial notice that Graves' disease is a condition that is capable of substantially limiting major life activities if left untreated by medication. *See Harris,* 102 F.3d at 522. Plaintiff urges this Court to do the same with respects to thrombocythemia and the Court finds that Plaintiff's request is warranted.

In the case at hand, Defendant does not argue that thrombocythemia is incapable of substantially limiting the life activities of those affected by it. Instead, Defendant merely argues that Plaintiff was not substantially limited in her major life activity of working. However, the regulations provide that the major life activity of working should be considered "[i]f an individual is not substantially limited with respect to any other major life activity ... If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in the major life activity of working." 29 C.F.R. app. § 1630.2(j) (1996). Defendant does not address "any other major life activity," and fails to establish that no genuine issue of material fact exists with regards to thrombocythemia constituting a disability under the Act.

Plaintiff testified that her oncologist, Dr. Christopher George, prescribed her current medication and indicated to Plaintiff that, if nothing had been done, Plaintiff was going to have a stroke and die. Deposition of Mechy Wright, Vol. I, p. 54–55. Moreover, Plaintiff testified that when she broke her wrist in the boating accident, her doctor was concerned of the impact her thrombocythemia would have on the healing process and that she would have arthritis for life. *Id.* at 55–56. Plaintiff testified that thrombocythemia affects the cardiovascular system and can

cause a stroke, heart attack, or embolism. *Id.* at 99. Consequently, the Court finds that Plaintiff has presented sufficient evidence, including her deposition testimony and matters subject to judicial notice, to create a genuine issue of material fact regarding whether Plaintiff's medical condition, in the absence of mitigating measures, would substantially limit her major life activities. *See Harris,* 102 F.3d at 523. Summary Judgment is denied with respects to Plaintiff's ADA claim.

## II. Title VII

■ Defendant argues that Plaintiff cannot demonstrate that Defendant's promotional decisions, or her "dual assignment" were pretexts for discrimination or retaliation. Defendant points out that employers are permitted to exercise discretion and the federal courts do not sit as super-personnel departments to review or second-guess management. Defendant argues that the issue is whether Plaintiff has produced enough evidence to demonstrate an actual intent on the part of Defendant to discriminate. Defendant recounts each of the promotions at issue and asserts that Plaintiff has not provided concrete evidence of discrimination. For example, Defendant asserts that the inaccurate score given to Plaintiff with regards to the promotional test was merely an honest mistake and plaintiff cannot prove otherwise.

On the other hand, Plaintiff asserts that she was more qualified for the vacant positions she applied for than the candidates who ultimately received the promotion and the majority of the positions were filled by males. Moreover, Plaintiff asserts that she was denied the opportunity to return to work on a light duty basis, but this opportunity was not denied to other male employees. Plaintiff explains that she has been very vocal concerning womens' rights issues and previously filed a charge of discrimination based on sex, disability, and retaliation against Defendant in August, 1993.

Plaintiff argues that as a result of her willingness to speak out on womens' issues, she was subjected to continuous discrimination and harassment. Plaintiff has highlighted her career with Defendant and has

described that she was even scrutinized because of the length of her hair and the shoes that she wore. Ms. Ginger Hancock, who previously worked at the Fire Department with Plaintiff, attests that she personally observed Plaintiff speak out on womens' issues and believes that Plaintiff had the reputation within the Fire Department for speaking out on womens' issues, including the unequal treatment of women in the Department. Moreover, Ms. Hancock maintains that she overheard male firefighters making derogatory comments about Plaintiff.

Plaintiff asserts that in late 1992, or early 1993, the Assistant Fire Chief improperly assigned William Ryan, Plaintiff's supervisor, to investigate Plaintiff's handling of an inspection. Mr. Ryan testified that he was of the impression that the Assistant Fire Chief wanted Ryan to find fault with Plaintiff's work and that the Assistant Fire Chief was looking for something to use to discredit Plaintiff's capabilities. Moreover, Plaintiff has established that certain key decisions, such as guidelines to be used in the case of a tie-breaking vote with regards to sick leave and "top considerations" used in promotional decisions, are left entirely to the discretion of the individuals Plaintiff claims discriminated against her. The use of subjective criteria in promotions and other employment decisions provides a ready mechanism for discrimination. *See Miles v. M.N.C. Corp.,* 750 F.2d 867, 871 (11th Cir.1985).

Furthermore, Plaintiff points out that during the time one of the subject positions was available, Plaintiff drafted a letter for the Tampa Fire Department Women's Advisory Committee which was to be sent to the St. Petersburg Times regarding discrimination in the Fire Department and the lack of promotional opportunities. The Fire Chief did not permit the Advisory Committee to send the letter and the Chief testified that he felt the issues should be resolved internally and that the letter would only fuel the fires. Subsequently, Plaintiff did not receive the

promotion. Significantly, no safeguards were taken to insure that Plaintiff's recent expression on womens' issues were not a factor in the promotional decision.

Plaintiff also argues that other factors such as receiving an incorrect score twice on the promotional scoring scale and the Department's departure from long standing policies regarding "dual assignments" highlights the discriminatory treatment she received. The Court finds that there are genuine issues of material fact with regards to Defendant's discriminatory intent. A reasonable jury could find that it is more likely than not that Defendant's promotional and policy decisions were based on Plaintiff's gender and/or retaliation for Plaintiff's outspoken views regarding womens' issues.[2] Summary judgment is inappropriate with regards to Plaintiff's Title VII claim.

*III. § 1983 Claim*

Plaintiff also asserts that the disability discrimination, sex discrimination, and retaliation by Defendant, under color of law, violated her Equal protection rights under the Fifth and Fourteenth Amendments. Moreover, Plaintiff argues that it is undisputed that Fire Chief Botto considered the Defendant's affirmative action plan with respect to the two (2) promotions at issue. Plaintiff asserts that Defendant used its affirmative action plan after the Court enjoined further use of the plan and that this is a *per se* violation of her constitutional rights.[3]

■ Defendant argues that § 1983 does not address rights in an employment context and grants no substantive prerogatives. Defendant contends that as a threshold matter, Plaintiff's § 1983 claims are precluded because of the other causes of action she has pled. Defendant asserts that the ADA and Title VII preempt a cause of action pursuant to § 1983 if the only alleged deprivation is of the employee's rights created under either the ADA or Title VII. Defendant cites *Hol-*

2. Neither party addresses First Amendment issues in their briefs; therefore, First Amendment arguments have not been substantively considered with regards to this Order.

3. Presumably, Plaintiff contests Defendant's assertion that Defendant's decisions would be subject to the rational basis test. Although Plaintiff is claiming she was discriminated against because of her sex, Defendant's affirmative action plan is guided by racial preference and would be subject to the strict scrutiny test.

brook v. City of Alpharetta, GA., 112 F.3d 1522, 1531 (11th Cir.1997) for the proposition that, unless an independent federal basis exists, Defendant is entitled to summary judgment on Plaintiff's § 1983 claim regardless of whether Plaintiff can proceed to trial on her claims of employment discrimination. Furthermore, Defendant argues that assuming *arguendo* that constitutional Equal Protection claims are present, Plaintiff cannot prove that any of Defendant's decisions were irrational; therefore, under the rational basis test, Plaintiff's claim must fail and summary judgment is proper.[4]

The Eleventh Circuit in *Holbrook* held that, "a plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is the employee's rights created by the Rehabilitation Act and the ADA." *Id.* (emphasis added). In addition, in *Johnson v. City of Fort Lauderdale*, 114 F.3d 1089 (11th Cir.1997), the Eleventh Circuit held that the Civil Rights Act of 1991 did not render Title VII and § 1981 the exclusive remedies for employment discrimination by a municipality and its employees; therefore, a constitutional cause of action under § 1983 would not be preempted by Title VII and the Civil Rights Act of 1991.

However, Plaintiff has sufficiently stated an independent cause of action cognizable under § 1983. A claim for a violation of federally protected rights (under color of state law), whether statutory or constitutional, is actionable under § 1983. Plaintiff's claim that she was discriminated against based on her sex in violation of her Equal protection rights under the Fourteenth Amendment, sufficiently states a distinct violation of a constitutional right. Moreover, "an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988). The allegations involving the Fire Chief's decisions regarding policies and promotions support Plaintiff's § 1983 claims. In addition, a municipality or a local government may be liable under § 1983 when a plaintiff can show that the right violated stemmed from a custom or policy prescribed by that governmental entity. Furthermore, plaintiff has alluded to a claim based on a violation of her First Amendment rights.

Neither party adequately addresses this issues regarding Plaintiff's § 1983 claim. Plaintiff is not precluded from bringing a § 1983 claim concurrent with her Title VII and ADA claims as long as the § 1983 claim is based on a distinct violation of a constitutional right. *See Gierlinger v. New York State Police*, 15 F.3d 32, 34 (2d. Cir.1994). The Court finds that Plaintiff has established that an independent federal basis exists for her § 1983 claims. Summary judgment should only be granted when the moving party has sustained its burden of showing the absence of a genuine issue of material fact; therefore, Defendant's motion must fail with regards to this cause of action. Accordingly, it is

**ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 21) be **DENIED.**

**DONE AND ORDERED.**