**Betty N. VEAL, Plaintiff,**

v.

**MEMORIAL HOSPITAL OF WASHINGTON COUNTY, Defendant.**

**No. 5:93–cv–13–4(WDO).**

United States District Court, M.D. Georgia, Macon Division.

July 31, 1995.

S. Phillip Brown, Macon, GA, for plaintiff.

Forrest Walker Hunter, Clare H. Draper, IV, Atlanta, GA, for defendant.

## *ORDER*

OWENS, District Judge.

Before the court are defendant's summary judgment motion and plaintiff's motion to amend her complaint for a second time. After careful consideration of the arguments of counsel, the relevant caselaw, and the record as a whole, the court issues the following order.

### I. FACTS

*A. General Background*

In May 1991, plaintiff had corrective eye surgery on her left eye per the advice of her physicians. The surgery was hoped to correct Fuch's Syndrome, a condition that causes the cornea to swell. Plaintiff then went to work for defendant Memorial Hospital of Washington County in July 1991 as a Ward Secretary on the night shift, from 11:00 p.m. to 7:00 a.m. the following morning. Plaintiff was the first person to fill the position of Ward Secretary on the night shift.

Plaintiff's supervisor claims to have begun receiving unfavorable reports on plaintiff, specifically, that she would incompletely or

incorrectly perform tasks assigned to her. More important, however, were the accusations that plaintiff was sleeping while on the job. The supervisor counseled plaintiff regarding these complaints, and even went so far as to transfer her for training to the morning shift. Defendant claimed none of these tactics solved the problems allegedly experienced with plaintiff.

Plaintiff was then discharged on the basis of her supervisor's recommendation to defendant. Plaintiff claims the discharge to have been based upon her disability—problems she experienced due to Fuch's Syndrome and the corrective surgery caused her eyes to be light sensitive, and this gave the appearance that she was sleeping when she claims to have simply been squinting her eyes. Many eyewitnesses controvert plaintiff's claim, and state that she was sleeping, pure and simple. All individuals involved in the process of the adverse employment decision deny considering plaintiff's eye condition when recommending, or ordering, her termination.

### B. Procedural History

Plaintiff's complaint, as initially filed on January 11, 1993, solely alleged a violation of specific provisions of the Rehabilitation Act of 1973 (the "Act"), 29 U.S.C. §§ 701–797b (1985 & Supp.1995), and nothing more. *See* Plaintiff's Motion to Amend Complaint and Add Count, ¶ 1 ("Plaintiff filed this action based *entirely* upon the Rehabilitation Act of 1973"). Specifically, the complaint sounds entirely in discrimination in employment. *See* Complaint, ¶¶ 9, 11 (failure to make reasonable accommodations "to allow plaintiff to perform her job properly," and terminated in "large part" due to her disability). Plaintiff alleged that she was terminated on March 10, 1992, and defendant admitted this fact in its answer.

Defendant then sought dismissal upon the basis of the statute of limitations. Plaintiff was terminated on March 10, 1992. Since the Rehabilitation Act does not prescribe for itself a statute of limitations, precedent mandated that this court "adopt a local time limitation as federal law if it [wa]s not inconsistent with federal law or policy to do so." *See Wilson v. Garcia*, 471 U.S. 261, 266–67,

105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985). The statutory scheme in this forum most closely analogous to the Rehabilitation Act is the Georgia Equal Employment for Persons with Disabilities Code, O.C.G.A. § 34–6A–1 to –6 (1992 & Supp.1995). *See Henrickson v. Pain Control and Rehabilitation Institute*, 205 Ga.App. 843, 424 S.E.2d 27 (1992). The limitations period for this local statute is one-hundred and eighty (180) days, measured from the time of the challenged conduct. O.C.G.A. 34–6A–6(a) (1992 & Supp.1995). One-hundred and eighty (180) days from the challenged conduct in the case *sub judice* would have fallen on or around September 10, 1992. Plaintiff conceded that its action would be timely "if there is a two (2) year statute of limitation." *See* Plaintiff's Motion to Amend Complaint and to Add a Count, at ¶ 4. Because plaintiff's complaint was not filed until January 1993, well after the applicable limitations period of 180 days, the court granted defendant's motion and dismissed the Rehabilitation Act claim.

The court granted defendant's motion to dismiss the Rehabilitation Act claim, however, only after it had first permitted plaintiff to amend her complaint to include a count under 42 U.S.C. § 1983—that state actors had deprived her of rights statutorily secured to her by the Rehabilitation Act. No constitutional deprivations were alleged in this amendment.

Plaintiff, in the wake of defendant's summary judgment motion, filed yet another motion to amend her complaint, in which she adds that defendant similarly deprived her of the constitutionally guaranteed right to due process. Plaintiff's second motion to amend comes after the conclusion of discovery on September 16, 1994. *See* Minute Entry of Aug. 16, 1994.

## II. DISCUSSION

### A. Plaintiff's Second Motion to Amend

So as to be precise, plaintiff's present motion to amend her complaint states:

the plaintiff was deprived of federally guaranteed due process by the defendant's failure to allow plaintiff to attend the hearing at which her termination was dis-

cussed, and in which hearing evidence taken from various employees concerning plaintiff's job performance all for the purpose of deciding plaintiff's fate as an employee.

Motion to Amend Complaint (5/24/95), ¶ 2. According to Federal Rule of Civil Procedure ("FED.R.CIV.P.") 15(a), a party at this stage in the litigation may amend its "pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Defendant's response to this motion clearly indicates that its consent is not forthcoming. The question is thus whether justice so requires that leave to amend be given.

■ The Supreme Court has elaborated on the meaning of the phrase "when justice so requires." The general rule regarding amendments has thus been summarized as follows:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Rosen v. TRW, Inc.*, 979 F.2d 191, 194 (11th Cir.1992) (quoting *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Whether leave to amend should be granted is a decision left to the sound discretion of the district court; however, the court should state a justifying reason for a denial. *Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir.1993).

Several courts of appeals have recognized the injustice inherent in allowing the plaintiff to add a new and distinct cause of action when discovery is complete (or nearly so), defendant has already filed and briefed its summary judgment motion, and plaintiff has had previous opportunities to add the particular claim he belatedly brings to the court. In *Grant v. News Group Boston, Inc.*, 55 F.3d 1, 5–6 (1st Cir.1995), the First Circuit

referred to the following facts in finding that the district court had not abused its discretion by refusing to permit an amendment that raised new and distinct theories. When plaintiff filed his amendment, discovery was complete, and would need to be reopened were the amendment allowed; defendant had completed its summary judgment motion and was undoubtedly well into its trial preparation; and plaintiff had not given a sufficient reason for not having amended the complaint earlier. The end result was that defendant would have been prejudiced by allowing the amendment. The court also noted that the facts upon which this putative theory was based had not been hidden prior to discovery.

The Seventh Circuit reached a similar conclusion in *Cleveland v. Porca Co.*, 38 F.3d 289, 297–98 (7th Cir.1994), in which plaintiff sought to add an entirely new claim "after discovery was completed and after the motions for summary judgment were fully briefed." Moreover, "defendants had already filed witness and exhibit lists with the court," and the deadline for amendments to the complaint (set by court order) had passed. In light of this, the court of appeals upheld the district court's action disallowing the amendment.

■ In the case *sub judice*, the court allowed plaintiff an opportunity to amend her complaint after defendant had already answered and filed a motion to dismiss.[1] In the court's considered judgment, allowing plaintiff to amend her complaint a second time would unduly prejudice defendant. *Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1, 4–5 (1st Cir.1983) (prejudice to defendant even where discovery need not be reopened; sufficient that allowance of amendment would affect defendant's trial strategy and tactics). *See also Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir.1987). Plaintiff's motion is accordingly **DENIED**.

*B. Defendant's Summary Judgment Motion*

The court now turns to defendant's summary judgment motion, which is premised on

---

1. The timing assumes importance under the precise language of FED.R.CIV.P. 15(a), which allows one amendment as a matter of course if done before the responsive pleading is filed. Here,

defendant had already filed both its answer and its motion to dismiss before plaintiff sought to amend her complaint.

the notion that the Title VII template of *McDonnell–Douglas* governs our proof mode. Notwithstanding this court's prior dismissal of the Rehabilitation Act claim, defendant claims that plaintiff "must prove a violation of the Rehabilitation Act in order to prevail at all in this case." Defendant's Brief, at 14. It is in light of this belief that defendant has tailored its arguments. *See supra* note 5. Defendant apparently assumes that the amendment adding the § 1983 cause of action functionally revived the Rehabilitation Act claim.

As a result of viewing this case in the aftermath of denying plaintiff's motion to amend, the court finds that it is unnecessary to undertake the task of applying the *McDonnell–Douglas* framework to the case before it. As will be seen, practical considerations are sufficient to find that **DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT,** and that this case should be dismissed.

The parties have proceeded on this summary judgment motion as if it were legally possible for plaintiff to succeed on its § 1983 claim—its *only* claim—by proving that defendant failed to comply with the dictates of the Rehabilitation Act, that defendant deprived her of rights secured by the Act. This assumption has been incorrect. As mentioned, this is the *sole* deprivation alleged under § 1983—no constitutional rights have been allegedly deprived, and no other rights as provided for in federal statutes have been infringed upon.

To establish a claim under § 1983, a plaintiff must prove that defendant is (1) a person who, (2) while acting "under color of" state law, (3) deprived plaintiff of a right protected by the Constitution or federal law, and in so doing (4) caused harm remediable by injunction or damages. 42 U.S.C. § 1983 (1988). It appears to the court that it is quite impossible for plaintiff to satisfy the third requirement—that she was possessed of "rights, privileges, or immunities secured by the Constitution and laws." Because plaintiff *solely* alleges rights secured under the Rehabilitation Act as the foundation for her § 1983 cause of action, the latter collapses unsupported when the legitimacy of the Rehabilitation Act claim is removed.

■ And now to the legal analysis. The Supreme Court first recognized that federal statutes might serve as the source of predicate rights for purposes of § 1983 causes of action in *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Thus,

> [a] plaintiff alleging a violation of a federal statute will be permitted to sue under § 1983 unless (1) the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983, or (2) Congress has foreclosed such enforcement of the statute in the enactment itself.

*Wilder v. Virginia Hosp. Assoc.,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455, 466 (1990) (quoting *Wright v. Roanoke Redevelopment and Housing Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)) (internal quotation marks omitted). *See also Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) ("§ 1983 is not available to enforce a violation of a federal statute 'where Congress has enclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983'"). The court will examine these exceptions in turn to see if the statute under which the plaintiff claims a "right," § 504 of the Rehabilitation Act of 1973, properly supports a "laws" action under § 1983. *See, e.g., Bodiford v. State of Alabama,* 854 F.Supp. 886, 893–94 (M.D.Ala. 1994).

### 1. Enforceable Rights

Regarding the first question—whether § 504 of the Rehabilitation Act creates "enforceable rights" in plaintiff—the court finds it indisputable that the Rehabilitation Act does just that. Pursuant to 29 U.S.C. § 794(a) (Supp.1995), "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial

assistance...."[2] Plaintiff is thus assured by reason of this statute the right to participate in certain programs free from discrimination based on her handicap. Persons such as plaintiff are clearly the intended beneficiary of this section; the section does not reflect a "mere congressional preference," but rather imposes a binding obligation; and the interest asserted by plaintiff is specific and defined.[3] *Wilder*, 496 U.S. at 509, 110 S.Ct. at 2517. The first exception is wholly inapplicable. Section 1983 is a proper vehicle for enforcement of rights secured by § 504 of the Act, unless the second exception applies.

### 2. Congressional Preclusion of § 1983 Remedy

In this court's judgment, the second exception is directly on point insofar as the comprehensive remedies, procedures, and rights provided by § 794 (Rehabilitation Act, § 504) foreclose the necessity of § 1983. Under this exception, the defendant bears the burden of demonstrating that Congress intended to preclude private enforcement of the particular statute under § 1983. *Wilder*, 496 U.S. at 520–21, 110 S.Ct. at 2523–24. Unless Congress expressly provides that it intends to "preclude resort to § 1983," private enforcement of particular statutorily secured rights is foreclosed "only when the statute itself creates a remedial scheme that is 'sufficiently comprehensive ... to demon-

strate congressional intent to preclude the remedy of suits under § 1983.'" *Id.* at 521, 110 S.Ct. at 2523 (quoting *Middlesex County Sewerage Auth. v. National Sea Clammers Assoc.*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981)). *See also Chan v. City of New York*, 1 F.3d 96, 105 (2d Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 472, 126 L.Ed.2d 423 (1993) (42 U.S.C. § 5310 insufficiently comprehensive to infer congressional intent that § 1983 actions were precluded); *Board of Educ. v. Leininger*, 822 F.Supp. 516, 531–32 (N.D.Ill.1993) (Vocational Education Act, National School Lunch Act, and Child Nutrition Act insufficiently comprehensive to infer congressional preclusion).

Whether the Rehabilitation Act contains a remedial scheme sufficiently comprehensive so that we may infer a congressional intent to displace § 1983 remedies has been a dispute for some time. There is no precedent on point in the Eleventh Circuit, on either the first or second of the *Wilder* exceptions. *Bodiford v. State of Alabama*, 854 F.Supp. 886, 893 (M.D.Ala.1994) (recognizing conflicting Eleventh Circuit authority on whether § 504 of the Rehabilitation Act could serve as the basis for a § 1983 "laws" action) (citing *Manecke v. School Bd. of Pinellas Cty.*, 553 F.Supp. 787 (M.D.Fla.1982), *aff'd in part and rev'd in part*, 762 F.2d 912 (11th Cir. 1985), *cert. denied*, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986)).[4]

**2.** The court is aware that the Rehabilitation Act, as amended by the Americans with Disabilities Act of 1990 ("ADA"), contains a § 794(d) that supplies language directly on point with the case *sub judice*—claims under § 794 alleging employment discrimination by reason of an individual's handicap are to be governed by the standards applied under Title I of the ADA. Section 794(d), moreover, contemplates *"a complaint* alleging employment discrimination under this section [§ 794]." (emphasis supplied).

However, the effective dates of these amendments was October 29, 1992; the complained of actions occurred no later than March 10, 1992, the date of plaintiff's termination. *See infra* note 5.

**3.** In regard to the specificity of the right, it is obviously capable of being within the competence of the judiciary to enforce. *See Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106, 110 S.Ct. 444, 448–49, 107 L.Ed.2d 420 (1989). Section 794a(a) adopts procedures applicable to Title VI of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000d to 2000d–7, regarding enforcement. *See, e.g.,* 42 U.S.C. § 2000d–2 (provision for judicial review). The fact that judicial review exists is alone sufficient to conclude that the interests asserted by plaintiff are capable of judicial enforcement.

**4.** The cases treating these two questions—whether § 504 creates an enforceable right cognizable under § 1983, or forecloses enforcement pursuant to § 1983—do not provide much. *See, e.g., Rodgers v. Magnet Cove Public Schools*, 34 F.3d 642, 645 (8th Cir.1994) (Wellford, Circuit Judge, concurring) (recognizing that, although panel's opinion did not reach the question, the district court's foreclosure of plaintiff's § 1983 action may have been error, where parallel claim under 29 U.S.C. § 794 also existed); *Madsen v. Boise State University*, 976 F.2d 1219, 1225 (9th Cir. 1992) (Norris, Circuit Judge, dissenting) (calling attention to fact that majority of panel failed to address alternative ground relied upon by district court that § 504 of the Rehabilitation Act contained a comprehensive remedial scheme fore-

However, *Alexander v. Chicago Park Dist.*, 773 F.2d 850 (7th Cir.1985), *cert. denied*, 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986), is extremely persuasive. In that case, the Seventh Circuit was faced with plaintiff's count III, one which was concededly based upon statutory violations, yet which had been brought under section 1983. The court stated, "[g]enerally, where a statute provides its own comprehensive enforcement scheme, that scheme may not be bypassed by pleading an underlying violation of the statute and bringing suit directly under section 1983." *Alexander*, 773 F.2d at 856. Finding that Title VII of the Civil Rights Act of 1964 was just such a statute as fit this general rule, the court undertook to decide whether the statute on which count III was based (Title VI of the Civil Rights Act of 1964) similarly fit this rule. The court found that it did. Because Title VI provided its own remedial scheme, "private actions based on Title VI may not be brought under § 1983."

■ In the court's considered judgment, the remedial scheme created by § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, communicates the intention of Congress to preclude § 1983 actions. *See, e.g., Holmes v. City of Chicago*, 94–C–4083, 1995 WL 270231, at *5 (N.D.Ill. May 5, 1995). However, only claims based upon *the specific rights protected by the particular statutory scheme*, § 504 in this instance, are precluded. *See Smith v. Barton*, 914 F.2d 1330, 1335 (9th Cir.1990), *cert. denied*, 501 U.S. 1217, 111 S.Ct. 2825, 115 L.Ed.2d 995 (1991) ("there is no indica-

tion that Congress intended to foreclose section 1983 claims that are unrelated to handicap discrimination"); *see also Alexander*, 773 F.2d at 855–56 (Title VI only precludes actions under § 1983 that are "based on" those titles; "only if the right asserted was created by Title VII must it be vindicated through the procedural system set up in that Act").

Indicative of § 504's all-inclusive, all-encompassing structure is the fact that § 504 provides "plaintiffs the full spectrum of remedies." *Waldrop v. Southern Co. Svcs., Inc.*, 24 F.3d 152, 156–57 (11th Cir.1994) (finding plaintiff entitled to jury trial on Rehabilitation Act claim that sought legal relief in the form of back pay). Moreover, in pursuit of these remedies under § 504, plaintiffs are instructed to follow the procedures set forth in Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d to 2000d–7 (1981 & Supp. 1994). *Wood v. President and Trustees of Spring Hill College*, 978 F.2d 1214, 1219 n. 10 (11th Cir.1992).[5] And it is at this point we come full circle, back to Title VI, and thus back to the decision by the Seventh Circuit in *Alexander*—"private actions *based on* Title VI may not be brought under § 1983," since "*Title VI provides its own remedial scheme.*" *Alexander*, 773 F.2d at 856 (emphasis supplied).

■ The district court in *Holmes v. City of Chicago*, 94–C–4083, 1995 WL 270231 (N.D.Ill. May 5, 1995), also applied *Alexander* in concluding that where a plaintiff sought to assert rights that were within the protective scope of § 504, he could not use

closing § 1983 suits); *Independent Housing Svcs. v. Fillmore Center*, 840 F.Supp. 1328, 1345 (N.D.Cal.1993) ("There is a split of authority regarding whether a section 1983 claim can be based on section 504 [29 U.S.C. § 794]"). *Compare Holmes v. City of Chicago*, 94–C–4083, 1995 WL 270231 (N.D.Ill. May 5, 1995) (§ 504 sufficiently comprehensive to preclude § 1983 action) *with Moreno v. Commonwealth of Pennsylvania*, Civ. 89–5730, 1991 WL 46472 (E.D.Pa. Apr. 1, 1991) (§ 504 not comprehensive enough, and thus § 1983 claim could be based thereon).

**5.** "[A]ny person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 ... [may employ] [t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964" in vindication of rights pro-

vided by this statute. 29 U.S.C. § 794a(a)(2). And prevailing parties may seek attorney fees. *Id.* § 794a(b). The court finds that explicit provision of judicial review, along with possibility of attorney fees, is strong evidence of congressional intent to preclude section § 1983 actions.

The court is also aware of 29 U.S.C. § 794(d): "The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under Title I of the [ADA] ... as such sections relate to employment." This provision, although seemingly directly on point with this case, has not been considered by the court. This subsection's effective date was October 29, 1992; the complained of act occurred no later than March 10, 1992, the date of plaintiff's termination. *See supra* note 2.

§ 1983 to vindicate *those rights*. The reasoning of the district court in *Holmes* is, like that in *Alexander*, very persuasive.

In this case plaintiff is attempting to plead violations of both § 504 of the Rehabilitation Act and Title I of the ADA under § 1983. The court finds that like Titles VI and VII, these statutes contain remedial structures sufficiently comprehensive to evince congressional intent to preclude section 1983 claims.

Section 504 of the Rehabilitation Act and Title I of the ADA contain simple and broad prohibitions of discrimination on the basis of a handicap or disability. It is clear that plaintiff's allegations fall within the scope of both § 504 and Title I of the ADA, and that plaintiff's claims under § 1983 are based upon the same alleged injuries as are plaintiff's § 504 and ADA claims. It does not appear that plaintiff's § 1983 claims add anything to plaintiff's substantive rights under either statute, other than possibly circumventing these statutes' administrative procedures and going directly to federal court. In light of the broad remedial scope of § 504 of the Rehabilitation Act and Title I of the ADA, their clear applicability to the alleged injuries in this case, and to the extent § 504 and Title I would allow a plaintiff to circumvent the exhaustion of administrative remedies that each statute requires, the court concludes that Congress did not intend to permit § 1983 claims based upon alleged injuries remediable under § 504 of the Rehabilitation Act and Title I of the ADA.

*Holmes*, at *5. This court could not have summarized this case more effectively. To allow plaintiff's claim would be to entirely ignore the applicable limitations period— § 1983 would not be merely providing a federal cause of action, it would be resurrecting rights from beyond the limitations period, and in so doing *creating rights* that had never been quickened. Section 1983 does not "create" rights, but merely a federal cause of action. *Cornelius v. Town of Highland Lake, Alabama*, 880 F.2d 348, 352 (11th Cir. 1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990) ("Section 1983 alone creates no substantive rights; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws.").

### C. Practical Considerations Make Summary Judgment Appropriate

Even if the court's conclusion—that the Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794(a), precludes private enforcement pursuant to § 1983—is incorrect, practical considerations force the same result in the case *sub judice*. Section 1983 only protects rights that are *"secured"* to an aggrieved party. Any and all "rights" that might have been "secured" to plaintiff disappeared when the statute of limitations expired. It seems to the court a matter of common sense that § 1983 should not be capable of being used for the purpose of circumventing limitation periods applicable to federal statutory schemes. Section 1983 does not *increase* the rights secured to us by the Constitution and laws of the United States; rather, it merely provides a federal cause of action when we have been deprived of them. *Cornelius*, 880 F.2d at 352. The "right" putatively provided by the Rehabilitation Act never was "secured to her" by § 504 for the one simple reason that the statute of limitations prevented it.

### III. CONCLUSION

Plaintiff's motion to amend her complaint for a second time is **DENIED**. To allow such an amendment, after the close of discovery; after defendant has relied throughout discovery on the claims as originally presented in the first amended complaint; and after defendant has filed and briefed its summary judgment motion would be manifestly unjust. Having considered all aspects of this case, the court's judgment is to disallow the amendment.

Defendant's motion for summary judgment is **GRANTED**. Although the federal statutory provision upon which plaintiff's complaint is based, § 504 of the Rehabilitation Act, does create enforceable rights in plaintiff that are cognizable under § 1983, the remedial structure provided for in the Act clearly evinces Congress' intent that

§ 1983 not be available as a vehicle for vindication of the rights secured therein. And even if the court's interpretation of congressional intent is incorrect, no enforceable "right" exists in the case *sub judice*, where the statute of limitations prevented the right from being quickened into one cognizable under § 1983.

**SO ORDERED.**