**Kim P. KRUGER, Plaintiffs,**

v.

**Ken JENNE, Sheriff of Broward County, and EMSA Correctional Care, Inc., Defendants.**

**No. 98–6616–CIV.**

United States District Court, S.D. Florida, Miami Division.

June 19, 2000.

Lawrence D. Silverman, Jeffrey D. De-Carlo of Akerman, Senterfitt & Eidson, P.A., Miami, FL, for Kim P. Kruger.

Scott J. Weiselberg, Daniel Alter of Bunnell, Woulfe, Kirschbaum, Keller & McIntyre, P.A., Fort Lauderdale, FL, for EMSA Correctional Care, Inc.

Summer M. Barranco of Purdy, Jolly & Giuffreda, P.A., Fort Lauderdale, FL, for Ken Jenne.

## ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION

JORDAN, District Judge.

The Court has reviewed the magistrate judge's report and recommendation regarding the defendants' motions to dismiss and Sheriff Jenne's motion for a more definite statement as well as Sheriff Jenne's objections to the report. Having conducted a *de novo* review of the arguments presented and the magistrate judge's recommended resolution, the Court adopts the magistrate judge's report and recommendation as an order.

The defendants' motions to dismiss the complaint [D.E. 86 & 88–1] are therefore DENIED. Sheriff Jenne's motion for a more definite statement [D.E. 88–2] is likewise DENIED.

*REPORT OF MAGISTRATE JUDGE*

SORRENTINO, United States Magistrate Judge.

### I. *Introduction*

In this civil rights action, the plaintiff Kim P. Kruger, who in January 1995 suffered total blindness and lost all visual acuity as a result of Bilateral Optic Atro-

phy, with assistance of counsel has filed an amended complaint (DE# 83) and notice of scrivener's error (DE# 94), alleging that he was subjected to multiple deprivations which occurred between January 6, 1998 and July of 1998, while he was incarcerated at the North Broward Detention Center ("NBDC"). The alleged deprivations relate to Kruger's blindness and other medical matters.

Two defendants are designated in the amended complaint: 1) Ken Jenne, Sheriff of Broward County; and 2) EMSA Correctional Care, Inc. ("EMSA"), the provider of medical care for NBDC inmates.

This Cause is before the Court upon a motion to dismiss by EMSA (DE# 86), and Sheriff Jenne's motion to dismiss or for a more definite statement (DE#s 88–1 and 88–2). The plaintiff filed responses, and Jenne filed a reply.

The plaintiff Kruger invokes both 42 U.S.C. § 1983, and the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. [the "ADA"]. The amended complaint is divided into four Counts, on each of which declaratory relief and damages are sought by the plaintiff. The claims and allegations in the four counts are, essentially, as follows:

Count I: (ADA—Sheriff Jenne in his Official Capacity)

The plaintiff, who is blind, requires a personal aide and/or a guide stick (cane) as well as other accommodations such as an electric razor and a "talking book" (which plays recordings, of persons reading the text of written materials) to assist him in participating in major life activities.

These forms of visual and functional assistance were denied to the plaintiff between January 6, 1998, on which date he arrived at the NBDC, and April 16, 1998, on which date the Broward Circuit Court entered an Order requiring Sheriff Jenne to provide the plaintiff with visual and functional assistance, and requiring the Sheriff to return his electric razor and talking book which had been confiscated from the plaintiff in retaliation because he was unable to keep his cell clean, and because of his repeated requests that he needed assistance.

The needed assistance and accommodations were denied until at least April 16, 1998, despite records that were transferred to the NBDC with the plaintiff detailing his medical needs, repeated written requests to EMSA and Sheriff Jenne's employees, and letters from the plaintiff to the Sheriff himself. As a result, the plaintiff was unable to participate in services, benefits, or programs at the jail. He was unable to access the law library, participate in outdoor and indoor physical exercise, access other parts of the NBDC, and participate in other forms of recreation.

The plaintiff also was forced to live in a cell that was not ADA approved or equipped for the needs of a blind person. Although the plaintiff did not suffer physical injuries while inside his own cell, the failure to accommodate the his visual needs rendered the facilities unsafe for him. Because he could not see he was injured in three separate slip and fall accidents outside of his cell, on February 19, March 1, and March 27, 1998.

Count II: (§ 1983—Sheriff Ken Jenne Individually)

Despite three letters directed to Sheriff Jenne personally from the plaintiff, and a letter sent to Jenne from Commissioner Parish, the defendant sheriff failed to accommodate the plaintiff's needs despite his knowledge that failure to do so could result in far more serious consequences to plaintiff Kruger than might occur with prompt attention. Due to Jenne's failure to act the plaintiff was unable to access the law library, was

unable to exercise or participate in other forms of recreation, and suffered physical injuries, pain, discomfort, and mental anguish. In failing to accommodate the plaintiff's serious needs, Sheriff Jenne was deliberately indifferent to the plaintiff's Eighth Amendment rights.

Count III (§ 1983—Sheriff Ken Jenne in his Official Capacity)

Sheriff Jenne and/or his employees and agents knew at the time of the plaintiff's transfer to the NBDC that he was in serious need of-visual and functional assistance in the form of a personal aide and/or a cane, but took no action or insufficient action to accommodate the plaintiff's needs despite their knowledge that failure to do so could result in far more serious consequences to plaintiff Kruger than might occur with prompt attention. Jenne and/or his employees and agents knew that Kruger suffered personal injuries, and was in serious need of special treatment and additional care for his injuries, and that their failure to act despite their knowledge that failure to do so could result in far more serious consequences to plaintiff Kruger than might occur with prompt attention. As a result of their failure to act, the plaintiff suffered great physical injury, pain, discomfort, and mental anguish. In failing to accommodate the plaintiff's serious needs, Sheriff Jenne, and/or his employees or agents, were deliberately indifferent to the plaintiff's Eighth Amendment rights.

Count IV: (§ 1983, Deliberate Indifference—EMSA)

EMSA knew from the time of his transfer to the NBDC that plaintiff Kruger was in serious need of visual and functional assistance in the form of a personal aide and/or cane, but took no steps to accommodate him. EMSA also knew of Kruger's physical injuries, but took no steps to provide special treatment and additional care for Kruger's injuries, despite its knowledge that failing to do so could result in far more serious consequences to plaintiff Kruger that might occur with prompt attention. In addition, the plaintiff suffered other medical problems for which improper and/or delayed medical treatment was provided. As a direct and proximate result of EMSA's failure to accommodate the plaintiff's needs for visual and functional assistance, and failure to treat his serious medical needs, the plaintiff Kruger suffered great physical injury, pain, discomfort and mental anguish, thereby subjecting him to deliberate indifference to his Eighth Amendment rights. The medical indifference was in part due to the policy, practice, and procedure of EMSA to refuse and/or delay providing special medical treatment to prisoners as a cost saving method of administering medical care at the NBDC.

## II. *Discussion*

Upon consideration of a motion to dismiss a complaint pursuant to *Fed.R.Civ.P.* 12(b)(6), the allegations of the complaint must be construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cannon v. Macon County,* 1 F.3d 1558, 1565 (11 Cir.1993).

### A. *EMSA's Motion to Dismiss (DE# 86)*

EMSA has filed a motion to dismiss the § 1983 claims for damages against it, as alleged in Count IV of the amended complaint. EMSA argues that Count IV of the amended complaint must be dismissed because EMSA cannot be held liable in a § 1983 suit for damages under the theory of supervisory liability and the doctrine of *respondeat superior.*

 The defendant EMSA is correct in arguing that just as supervisory officials cannot be held liable in a § 1983 suit under

the doctrine of supervisory liability or the theory of *respondeat superior*,[1] neither can an employer such as EMSA simply be held liable under a theory of *respondeat superior* for an alleged § 1983 violation by one of its employees. *See: Powell v. Shopco Laurel, Co.*, 678 F.2d 504 (4 Cir.1982).

In this case, however, the plaintiff has alleged that EMSA was put on written notice of his special needs for visual assistance, including a personal aide and/or cane, and his requests were ignored; and further alleges that delays in providing medical care for his serious medical needs, and the provision of improper and inadequate medical care were the direct result of EMSA's custom, policy, or procedure to refuse and/or delay providing special medical treatment to prisoners as a cost saving method of administering medical care at the NBDC.

The plaintiff Kruger alleges that EMSA provided inadequate and/or delayed medical care for injuries which he suffered in his three slip an fall accidents, as well as for unrelated medical matters.

The alleged deliberate indifference to Kruger's serious medical needs, and delays in providing treatment are described as follows.

Following his February 19, 1998 accident, in which he fell over a wheelchair in an elevator and injured his right shoulder, EMSA employees ignored Kruger's repeated requests for reevaluation and further x-rays, after initial x-rays failed to show any fracture or abnormality. Finally, an EMSA physician, DR. Wilson, diagnosed Kruger with a sprained shoulder, and recommended a special orthopedic evaluation, additional x-rays, and special treatment to lessen Kruger's continued pain and discomfort, Dr. Erin Cody, the EMSA Medical Director/Physician intervened and refused to provide the recommended course of evaluation and treatment because it was too expensive, causing the plaintiff to needlessly suffer for a period of eight months. Subsequently, Kruger was x-rayed and diagnosed with a fractured shoulder, and arthritis caused by the fall and lack of treatment.

On March 1, 1998, Kruger fell in an overcrowded doorway and severely injured his left eye. Kruger asked for treatment but his requests were denied, and treatment was delayed, resulting in an infection and the need for medication. Twenty-five days after the accident Kruger was sent to an eye specialist, Dr. Getcher, who prescribed rehabilitation, and medication and safety glasses for treatment of the eye infection. Dr. Cody of EMSA did not provide the medications prescribed by Dr. Getcher, and instead provided the wrong medication for ten days, causing the plaintiff further injury and discomfort.

On March 27, 1998, Kruger injured his knee in a third fall, when he slipped on a dinner tray which was left on the floor in a hallway. He requested treatment, and again his requests were denied, and Kruger's injuries from this fall were not treated.

Finally, Kruger alleges that in he began to suffer from a urinary tract infection which caused bleeding. He requested treatment, Dr. Wilson prescribed a special

---

1. It has long been established that public officials in supervisory positions cannot simply be held vicariously liable for the acts of their subordinates. *Robertson v. Sichel*, 127 U.S. 507, 8 S.Ct. 1286, 3 L.Ed. 203 (1888); *Jasinski v. Adams*, 781 F.2d 843 (11 Cir.1986); *Byrd v. Clark*, 783 F.2d 1002, 1008 (11 Cir. 1986); *Fundiller v. City of Cooper City*, 777 F.2d 1436 (11 Cir.1985). Nor can liability be predicated solely upon the doctrine of *respondeat superior* in a § 1983 action. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Vineyard v. County of Murray, Georgia*, 990 F.2d 1207 (11 Cir.1993).

medication, Cipro, and recommended that Kruger be sent to see a urologist. Again, Dr. Cody intervened, denied Kruger the Cipro which Dr. Wilson had prescribed because it was too expensive, and refused to authorize a urology referral due to the expense. Counsel on behalf of Kruger contacted EMSA and demanded that he be provided with special treatment. Their demands were ignored. Eventually, in July, approximately five months after the onset of the infection, the Circuit Court ordered Sheriff Jenne to see that Kruger was provided with special treatment from a urologist.

In the prison context, whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. An Eighth Amendment claim of denied or delayed medical care requires a showing of acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs or the unnecessary and wanton infliction of pain. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Brown v. Hughes,* 894 F.2d 1533 (11 Cir.1990).

To prevail on such a claim a plaintiff must show causation, in addition to proving the infliction of unnecessary pain and suffering, and deliberate indifference.[2] Negligence is not enough,[3] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[4]

On the other hand, the standard may be met where a plaintiff establishes that there is intentional, unexplained delay in providing treatment for serious painful injuries, *Brown v. Hughes, supra,* and cases cited therein; repeated warnings about an inmate's health problems were ignored,

2. In *LaMarca v. Turner,* 995 F.2d 1526, 1535 (11 Cir.1993) the Court held that to prevail upon an Eighth Amendment Claim for damages in a civil rights suit, a plaintiff must prove three elements. 1) the infliction of unnecessary pain or suffering, *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981); 2) deliberate indifference on the part of the defendant(s), *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); and 3) causation, *Williams v. Bennett,* 689 F.2d 1370, 1389–90 (11 Cir.1982).

3. It is well settled that a showing of mere negligence, neglect, or medical malpractice is insufficient to recover on a § 1983 claim. A showing of conscious or callous indifference is required. *Estelle v. Gamble, supra,* 429 U.S. at 104–06, 97 S.Ct. 285; *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Brown v. Hughes,* 894 F.2d 1533, 1537–38 (11 Cir.1990); *Washington v. Dugger,* 860 F.2d 1018, 1021 (11 Cir. 1988).

4. The Courts have long recognized that a difference of opinion between an inmate and the prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently hold that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. *Estelle v. Gamble, supra,* at 107, 97 S.Ct. 285 ("matter[s] of medical judgment" do not give rise to a § 1983 claim). *See: Ledoux v. Davies,* 961 F.2d 1536 (10 Cir.1992) (inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); *Ramos v. Lamm,* 639 F.2d 559, 575 (10 Cir.1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Smart v. Villar,* 547 F.2d 112, 114 (10 Cir.1976) (same) *Burns v. Head Jailor of LaSalle County Jail,* 576 F.Supp. 618, 620 (N.D.Ill.1984) (exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under § 1983).

*Carswell v. Bay County,* 854 F.2d 454, 457 (11 Cir.1988); or where prison personnel fail to respond to a known medical problem, or prison doctors take the easier and less efficacious route in treating an inmate, *Brown v. Hughes, supra, Waldrop v. Evans,* 871 F.2d 1030, 1033 (11 Cir.1989), and *Rogers v. Evans,* ·792 F.2d 1052, 1058–59 (11 Cir.1986).

The standard may also be met when prison officials have prevented an inmate from receiving recommended treatment or an inmate is denied access to medical personnel capable of evaluating the need for treatment, *Ancata v. Prison Health Services, Inc.,* 769 F.2d 700, 704, or necessary medical treatment has been delayed for non-medical reasons. *See: Ancata, supra,* 769 F.2d at 704 (citing *City of Revere v. Massachusetts General Hospital,* 463 U.S. 239, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983), and *Archer v. Dutcher,* 733 F.2d 14, 17 (2 Cir.1984)).

In this case, the plaintiff alleges that but for EMSA's failure to heed his requests for visual assistance he likely would not have fallen and been injured; and further alleges that treatment for his injuries and medical conditions was denied, delayed, or improper, and that on more than one occasion treatment recommended and/or prescribed by an EMSA physician was denied by EMSA based on an EMSA cost cutting policy, resulting in further injury and/or suffering to the plaintiff.

Construed in a light most favorable to the plaintiff, the claims and allegations in Count IV of the amended complaint, pursuant to § 1983 and the Eighth Amendment, are sufficient to survive a motion dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6).

EMSA's motion (DE# 86) should be denied.

**B. *Sheriff Jenne's Motion to Dismiss (DE# 88–1) Or for a More Definite Statement (DE# 88–2)***

Sheriff Jenne is named in Counts I, II, and III of the amended complaint.

As discussed below, the allegations of the amended complaint are not overly vague or conclusory, and based on those allegations the claims in Counts I, II, and III of the amended pleading are sufficient to survive defendant Jenne's motion to dismiss pursuant to *Fed.R.Civ.P.* 12(b)(6).

Sheriff Jenne's motion for a more definite statement (DE# 88–2) should be therefore be denied.

Counts I, II, and III of the amended complaint are discussed below in the numerical order in which they are alleged.

**1. *Count I***

In Count I sheriff Jenne is sued in his official capacity for alleged deprivations of the plaintiff's rights under the ADA.

The ADA is a statute prohibiting discrimination against the disabled. The ADA expanded the reach of the antidiscriminatory provisions of a previously enacted statute, the Rehabilitation Act (the "RA"). The RA applies to any public facility that receives federal funding. The ADA applies to any public entity. *See: Armstrong v. Wilson,* 942 F.Supp. 1252 (N.D.Cal.1996). The remedies available under the RA and the ADA are the same. *See:* 42 U.S.C. § 12133.

The ADA became effective on January 26, 1992, eighteen months after its enactment on July 26, 1990. *See:* Pub.L. No. 101–336, Title II, § 205, 104 Stat. 337 (1990); *Noland v. Wheatley,* 835 F.Supp. 476, 483 (N.D.Ind.1993).

The ADA consists of three titles addressing discrimination against the disabled in various contexts. Titles I and III of the ADA are inapplicable to the facts of this case.[5] Title II of the ADA provides

---

**5.** Title I of the ADA prohibits employment discrimination, 42 U.S.C. § 12112; and Title III of the ADA prohibits discrimination by public accommodations involved in interstate

that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to any discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is broadly defined as any person who "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The term "public entity" is defined to be "any department, agency, special purpose district, or other instrumentality of a State or States, or local government." 42 U.S.C. § 12131(1). On June 15, 1998, Title II of the ADA was held by the United States Supreme Court to apply to state prisons and state prison services. *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998).

■ Jenne makes three arguments in support of his motion to dismiss the claims in Count I of the amended complaint. First, he argues that the allegations of the amended complaint are "fairly vague" as to what specific conduct on his part violated the ADA. He also alleges that plaintiff Kruger's allegation that he was provided a personal aide and/or cane, an electric shaver, and was allowed a "talking book" while incarcerated in the Florida DOC, prior to his temporary transfer to the NBDC, "does not automatically entitle him to such things in a county jail such as NBDC, nor does the fact that he was allegedly not provided such things support a claim for violation of the ADA." Finally, defendant Jenne argues that none of the plaintiff's injuries occurred inside of his cell, and that the plaintiff Kruger has therefore made a specious argument when he alleges that he

was housed in a cell which lacked hand railings or other special safety devices and therefore was unequipped for the needs of a blind inmate, which in turn allegedly put him "at serious risk of personal injury." In footnote 4, at page 4 of his motion, Jenne states, "Obviously, every area and space in the entire jail cannot be fitted with hand railings nor does the ADA require such."

Jenne's arguments concerning Count I fail for the following reasons.

Insofar as defendant Jenne alleges that the complaint is vague concerning his personal involvement, his argument is to no avail.

Jenne is sued in Count I in his official capacity. The ADA does not provide for individual liability. *Pritchard v. Southern Company Services*, 102 F.3d 1118 (11 Cir. 1996); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11 Cir.1996); *Fernandez v. Community Asphalt, Inc.*, 934 F.Supp. 418, 420–21 (S.D.Fla.1996). Moreover, the plaintiff has alleged that Jenne, his employees, and EMSA, were all on notice of the plaintiff's special needs, by virtue of the medical records that were transferred with the plaintiff when he arrived at the NBDC, and numerous written notices to Jenne personally, to Jenne's employees, and to EMSA.

The plaintiff does not claim, as Jenne suggests, that the entire jail (NBDC) should have been fitted with hand rails. Rather, the plaintiff alleges that he is blind, and has a serious need for a personal aide and/or a cane to assist him in walking about the NBDC. The plaintiff claims that he fell and was injured three times as a result of not having these forms of visual assistance. He also alleges that

commerce such as hotels, restaurants, and privately operated transportation services, 42

U.S.C. §§ 12182, 12184.

his electric shaver and his talking book were confiscated, thereby putting him at risk of cutting himself if he used a blade razor, and denying him the ability to "read" talking books. Kruger further alleges that due to his blindness and the refusal of his requests for visual assistance, he, unlike sighted inmates, was unable to partake in activities or programs such as in outdoor and indoor exercise, and other forms of recreation, and was unable to access the law library, and other parts of the NBDC.

These allegations are sufficient to survive Jenne's Rule 12(b)(6) motion to dismiss on grounds that the allegations of Count I fail to state a claim under the ADA. The allegations clearly appear sufficient to allege that Kruger is a "qualified individual" within the meaning of the ADA. And despite Kruger's argument that there was no obligation under the ADA to provide the accommodations allegedly denied to the plaintiff, there is nothing to suggest that the NBDC is not a "public entity" as defined in the statute. Jenne's motion to dismiss Count I should therefore be denied.[6]

### 2. *Count II*

■ Defendant Jenne's arguments for dismissal of the § 1983 claims against him in his individual capacity also fail. He claims that the plaintiff is simply attempting to hold him vicariously liable for the acts or omissions of his subordinates, and that a plaintiff's burden of pleading a complaint against a supervisor cannot be discharged by pointing to a single incident or isolated incident, as a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibility. These defenses, however, overlook the allegations that the plaintiff Kruger and his counsel repeatedly put Jenne personally on notice of Kruger's needs, and the fact that they were not being met. Jenne also was allegedly contacted by a county commissioner in writing, and allegedly failed to take action. According to the plaintiff, Jenne needed only to have authorized an inmate aide, or a the very least a walking cane, to assist the plaintiff in his daily activities, and to prevent injury. The plaintiff has alleged that he fell and was injured three times, as a direct result of Jenne's failure to act, after he was put on notice of the plaintiff's needs as a blind individual.

■ It is beyond dispute that prison and jail officials are obligated· to take all reasonable precautions to protect inmates from known dangers. *See Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Hopkins v. Britton,* 742 F.2d 1308 (11 Cir.1984); *Harmon v. Berry,* 728 F.2d 1407 (11 Cir.1984); *Saunders v. Chatham County Board of Commissioners,* 728 F.2d 1367 (11 Cir.1984); *Williams v. Bennett,* 689 F.2d 1370 (11 Cir.1982).

---

6. Jenne cites 28 C.F.R. § 35.135, which states as follows, verbatim:

This part does not require a public entity to provide to individuals with disabilities personal devices, such as wheelchairs; individually prescribed devices, such as prescription eyeglasses or hearing aids; readers for personal use or study; or services of a personal nature including assistance in eating, toileting, or dressing.

The notes pertaining to § 35.135, as published in the "Section by Section Analysis" of the ADA parts and subpart, as found in 28 CFR Ch.I (7–1–99 Edition), Pt. 35, App.A, at page 490–91, however, explicitly states that the "personal devices and services limitation" does not preclude the short-term loan of personal receivers that are part of an assistive listening system. There is no mention that the limitation includes electric razors, aides or canes to assist the totally blind to walk without injury.

With regard to Count II of the amended complaint Jenne also argues that the pleading fails to state a claim with regard to the alleged failure to provide medical care, since negligence is not actionable under § 1983, and a mere difference of opinion between inmate and a physician concerning diagnosis and the proper course of treatment does not give rise to a constitutional deprivation. As discussed, *supra*, however, the amended pleading includes allegations of delays and/or refusal of medical treatment for non-medical reasons, including instances when the plaintiff's treating physician at the NBDC stated that the test, consultation, therapy or medication should be provided. These allegations are sufficient to state a claim for deliberate indifference to serious medical needs, pursuant to *Estelle v. Gamble, supra*, and its progeny.

Finally, Jenne argues that the granting of qualified immunity is the rule, rather than the exception, and that the plaintiff has not met his burden of showing that Jenne is not entitled to qualified immunity.

On the claims in Count II, it cannot be determined at this juncture whether the defendant Jenne is entitled to qualified immunity, which under appropriate circumstances serves to insulate governmental officials from personal liability for actions taken pursuant to their discretionary authority. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Flores v. Satz*, 137 F.3d 1275 (11 Cir.1998); *Foy v. Holston*, 94 F.3d 1528 (11 Cir.1996). As to Jenne that determination can be made only after further factual development of the case.

In sum, construed in a light most favorable to the plaintiff, *Scheuer v. Rhodes*, and *Cannon v. Macon County, supra*, the plaintiff's allegations in Count II are sufficient to survive Jenne's motion to dismiss the Eighth Amendment claims against him in his individual capacity.

### 3. *Count III*

In Count III, the plaintiff sues Sheriff Jenne in his official capacity, on claims for damages pursuant to 42 U.S.C. § 1983.

■ In his motion to dismiss, citing *Veal v. Memorial Hospital of Washington County*, 894 F.Supp. 448 (M.D.Ga.1995), and *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522 (11 Cir.1997), Jenne argues that a plaintiff cannot maintain a § 1983 action in lieu of, or in addition to a cause of action under the ADA, or the Rehabilitation Act. Jenne also argues that he cannot be held liable under *respondeat superior* or vicarious liability, and that there must be a custom, policy, practice or procedure that was a moving force behind the alleged constitutional violation.

■ Jenne's interpretation of *Holbrook* and *Veal*, is incorrect. A reading of *Holbrook*, and subsequent cases interpreting it make clear that the Eleventh Circuit in *Holbrook* held that a § 1983 claim would be duplicative of an ADA claim only if the only alleged deprivation is the plaintiff's rights created by the Rehabilitation Act and the ADA. *See Maggio v. Florida Dept. of Labor and Employment*, 56 F.Supp.2d 1370, 1377 (M.D.Fla.1999), and *Wright v. City of Tampa*, 998 F.Supp. 1398, 1403–04 (M.D.Fla.1998). The Court in *Holbrook* did not hold that a plaintiff may not simultaneously maintain causes of action under § 1983 and the ADA, but rather that the litigant may do so as long as the § 1983 claims are based on independent causes of action, i.e. claims based on violation of federally protected rights, whether constitutional or statutory. In this case, the plaintiff alleges independent claims that the defendant, under color of state law, subjected him to cruel and unusual punishment, in violation of his rights under the Eighth Amendment.

**1340**

Jenne also argues with regard to Count III that he cannot be held liable under *respondeat superior* or vicarious liability, and that there must be a custom, policy, practice or procedure that was a moving force behind the alleged constitutional violation.

Jenne's vicarious liability argument in Count III fails. As discussed *supra*, the plaintiff has alleged facts indicating that he is not simply attempting to hold Jenne vicariously liable for the acts or omissions of subordinates, but rather is suing him because he was put on notice of the plaintiff's needs and failed to act.

As for Jenne's argument that there must be a custom, policy, practice or procedure which is the moving force behind the alleged deprivation, the allegations of the amended complaint, construed in the light most favorable to the plaintiff are sufficient. The amended complaint alleges, in essence, that Jenne's failure to provide the plaintiff with visual assistance was a policy of providing no assistance to blind individuals, and that there also was a policy of denying or delaying care for serious medical needs based on monetary concerns. The policies are alleged to have been the direct cause resulting in deprivations of the plaintiff's Eighth Amendment rights.

The alleged policy of providing no assistance for the blind gave the plaintiff no choice but to walk without and aide or a cane. As noted *supra*, it is beyond dispute that prison and jail officials are obligated to take all reasonable precautions to protect inmates from known dangers. *See Davidson, Smith, Hopkins, Harmon, Saunders,* and *Williams, supra.* The plaintiff and his attorneys repeatedly told Jenne that failure to provide the plaintiff with visual assistance would place him at serious risk of harm. The warnings were ignored, and as a direct result the plaintiff fell and was injured no less than three times.

The alleged cost savings policy at the NBDC is alleged to have caused the prolongation of the plaintiff's suffering, and to have worsened his conditions, when diagnosis and treatment were denied, or delayed based on institutional monetary concerns.

The claims and allegations in the amended complaint are therefore sufficient to survive Jenne's motion to dismiss the § 1983 claims in Count III against Jenne in his official capacity on the grounds asserted by him.

### III. *Conclusion*

It is therefore recommended that: 1) EMSA's motion to dismiss Count IV of the amended complaint (DE# 86), be denied; 2) Jenne's motion to dismiss Counts I, II, and III of the amended complaint (DE# 88–1) be denied; 3) Jenne's motion for a more definite statement (DE# 88–2) be denied; and 4) the case remain pending as to the defendants EMSA and Jenne.

Objections to this report may be filed with the District Judge within ten days of receipt of a copy of the report.

May 3, 2000.